James H. ARMSTRONG, M.D.; Mark Miles, M.D.; Susan Wicklund, M.D.; Susan Cahill P.A.; Mary Stranahan, D.O.; Beth E. Thompson, M.D.; and Edwin L. Stickney, M.D., on behalf of themselves and their patients throughout Montana, the surrounding states and Canada and on behalf of a class of performing and referring physicians, Plaintiffs,

v.

Joseph MAZUREK, in his official capacity as Attorney General of the State of Montana, Defendant.

No. CV–95–083–GF.

United States District Court, D. Montana, Great Falls Division.

Sept. 29, 1995.

Bruce Measure, Kalispell, MT.

Turner Graybill, Great Falls, MT.

Janet Benshoof, New York City.

Simon Heller, New York City.

Clay Smith, Helena, MT.

Elizabeth Baker, Helena, MT.

Timothy Whalen, Billings, MT.

## MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

### I. BACKGROUND

The plaintiffs[1] instituted this action for declaratory and injunctive relief under 42 U.S.C. § 1983, challenging the constitutional validity of Chapter 321 of the 1995 Montana Session Laws, otherwise identified as House Bill No. 442 and entitled: "An Act Clarifying That Only a Physician May Perform an Abortion; and Amending Sections 37–20–103 and 50–20–109, M.C.A."

The plaintiffs challenge the following three aspects of Chapter 321 (to be codified at Mont.Code Ann. §§ 37–20–103 and 50–20–109): (1) an abortion may be performed only by a "licensed physician"; (2) an abortion may not be performed after the first trimester of pregnancy, except in a licensed hospital; and (3) the "solicitation, advertising, or other form of communication that has the purpose of inviting, inducing, or attracting any person" to utilize the services of a physician or facility that performs abortion is banned in the State of Montana.

At the outset, it is important to note the latter two proscriptions have previously been declared as unconstitutional. The requirement that an abortion performed after the first trimester must be done in a licensed hospital was an issue resolved by this court in the case of Doe v. Esch, No. CV–93–60–GF

(judgment entered November 26, 1993). The judgment in Esch, which enjoined enforcement of the hospitalization requirement of M.C.A. § 50–20–109(1)(b) was entered pursuant to stipulation of the parties. The State of Montana acknowledges in the present action that the State of Montana remains bound by the Esch judgment; a fact which would preclude the enforcement of the hospitalization requirement. The advertising/solicitation prohibition, embodied in section 50–20–109(4), is likewise precluded by the judgment entered in Doe v. Deschamps, 461 F.Supp. 682 (D.Mont.1976). The State of Montana again acknowledges, as it must, that it remains bound by the judgment in Deschamps from enforcing the prohibition against advertising/solicitation.

While the State of Montana acknowledges the unenforceability of the hospitalization requirement and the prohibition against advertising, it suggests there exists no "justiciable controversy" regarding these provisions since the State of Montana is precluded by the referenced judgments from enforcing the same. This argument is hardly compelling in view of the clear unconstitutionality of the two provisions and a judgment declaring the provisions unconstitutional and enjoining their enforcement would be entirely appropriate.

The real focus of this case is upon the constitutionality of the "physicians only" provision of Chapter 321.[2] The provision is set

---

1. Plaintiffs Armstrong, Miles and Wicklund are physicians licensed to practice in the State of Montana who provide abortion services. Plaintiffs Stranahan, Thompson and Stickney are physicians licensed to practice in the State of Montana who routinely refer patients to other abortion providers in the State of Montana. Plaintiff Cahill is a physician assistant-certified, who performs abortions in the State of Montana.

2. The plaintiffs, in an effort to ensure that the "physicians only" requirement of Chapter 321 does not become effective, suggests that the various provisions of Chapter 321 are not "severable". Accordingly, so the argument goes, because the hospitalization and advertising provisions are unconstitutional, Chapter 321 must be declared unconstitutional in its entirety. The argument is without merit. The test for determining severability of a non-constitutional provision of a statute is well established. "Unless it is evident that the Legislature would not have en-

acted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is 'fully operative as a law.'" New York v. United States, 505 U.S. 144, 186–88, 112 S.Ct. 2408, 2434, 120 L.Ed.2d 120 (1992) (quoting, Alaska Airlines, Inc., v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 1479–80, 94 L.Ed.2d 661 (1987)). The Montana Supreme Court acknowledged this principle in State v. Lance, 222 Mont. 92, 721 P.2d 1258 (1986), wherein the court acknowledged the "elementary principle of constitutional law that 'the same statute may be in part constitutional and in part unconstitutional, and ... if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected.'" Lance, 721 P.2d at 1264 (citation omitted). Consistent with the foregoing principle, while the hospitalization and advertising provisions of Chapter 321 are unconstitutional, the "physicians only" provision

forth in two separate sections of Chapter 321 as follows:

Section 1. Section 37–20–103, MCA, is amended to read:

**37–20–103. Limitations on authority conferred—exception.** Except as provided in 37–10–102, nothing in this chapter may be construed to authorize a physician assistant-certified to perform those functions and duties specifically delegated by law to persons licensed as optometrists, as defined under Title 37, chapter 10. A physician assistant-certified may not perform an abortion.

Section 2. Section 50–20–109, MCA, is amended to read:

**50–20–109. Control of practice of abortion.** (1) No An abortion may not be performed within the state of Montana.

(a) except by a licensed physician;

It is important to note that the Montana Legislature enacted the "physicians only" provision in response to the judgment entered in *Esch*. In *Esch*, the court was not ultimately called upon to determine whether a statutory provision precluding the performance of abortions by anyone other than a licensed physician passed constitutional muster. In response to the complaint in *Esch*, the State of Montana acknowledged that the term "licensed physician", as used in Mont. Code Ann. § 50–20–109(1)(a) (1993), included physician assistants who worked under the direct supervision of a physician pursuant to a "utilization plan" approved by the Montana Board of Medical Examiners. The State of Montana emphasizes this construction of the term "licensed physician" was compelled by the then existing statutory law, more particularly Mont.Code Ann. § 37–20–403 (1993) (physician assistant-certified recognized as agent of the supervising physician), Mont. Code Ann. § 37–20–303 (statute draining authority to the Board of Medical Examiners to approve physician assistant-certified utilization plans detailing the permissible range of a physician assistant-certified's practice) together with the Board of Medical Examiners'

administrative construction of its authority to approve a utilization plan which allowed a physician's assistant (more specifically plaintiff Susan Cahill P.A.) to perform a first trimester abortion by "suction curettage". The statutory amendments embodied in Chapter 321, the State of Montana emphasizes, were specifically designed to clarify that only a physician may perform an abortion in the State of Montana.

The plaintiffs predicate their challenge to the constitutionality of the "physicians only" provision of Chapter 321 upon the following four alternate bases:

(1) the purpose of the provision is to impose a substantial obstacle in the path of a woman seeking a previability abortion;

(2) the provision has the effect of imposing a substantial obstacle in the path of a woman seeking a previability abortion;

(3) the provision violates the bill of attainder clause of Article I, section 10 of the federal Constitution because it constitutes a form of legislative punishment directed specifically against plaintiff Cahill (the only physician assistant performing abortions in the State of Montana); and

(4) the provision impermissibly discriminates on the basis of sex by excluding from the permissible scope of practice with physician assistants, a type of medical care sought only by women.

Chapter 321 is to become effective on October 1, 1995. The plaintiffs have moved the court for preliminary injunctive relief, pursuant to Fed.R.Civ.P. 62, to preclude the State of Montana from enforcing the provision of Chapter 321 which bans the performance of first-trimester abortions by a physician assistant.[3] The State of Montana moves the court, pursuant to Fed.R.Civ.P. 65, to enter summary judgment in that entity's favor declaring, in effect, the validity of the "physicians only" provision of Chapter 321.

The plaintiffs' request for preliminary injunctive relief was heard before the court on

---

may legitimately be severed if, in fact, it is found to pass constitutional muster.

**3.** Consistent with the court's previous observations, the State of Montana is properly enjoined

from enforcing the hospitalization and advertising provisions of Chapter 321.

September 29, 1995. Having considered the arguments advanced by the parties in support of their respective positions, the court deems it appropriate to DENY the plaintiffs' request that the court preliminarily enjoin the State of Montana from enforcing the "physicians only" provision of Chapter 321.

## II. DISCUSSION

### A. STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

 The traditional equitable criteria for granting preliminary injunctive relief are "(1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted; (3) a balance of hardships favoring the plaintiff." *Los Angeles Memorial Coliseum Comm. v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). Alternatively, the moving party must demonstrate "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tip sharply in its favor." *Id.,* at 1201. "These are not separate tests but the outer reaches of a single continuum." *Ibid., accord, People of Village of Gambell v. Hodel,* 774 F.2d 1414, 1419 (9th Cir.1985). In the two tests, "the required showing of harm varies inversely with the required showing of meritoriousness." *San Diego Committee Against Registration and the Draft v. The Governing Board of Grossmont Union High School,* 790 F.2d 1471, 1473 (9th Cir.1986). Analysis of these criteria under the circumstances of the present case, compel the court to deny the plaintiffs' motion for preliminary injunctive relief.

 The court recognizes that the plaintiffs' challenge to the "physicians only" provision raises a serious question, but is not convinced that under the balance of hardships is such that the court must strike the balance in favor of the plaintiffs' request. While the court's refusal to grant the preliminary injunctive relief requested will operate to preclude plaintiff Cahill from performing abortions, the hardship resulting from the disruption of the *status quo,* a hardship borne only by Cahill, is not accompanied by a sufficient showing of merit in the plaintiffs' position that would warrant provisional relief.

### B. "UNDUE BURDEN"

 In *Planned Parenthood v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), the Supreme Court, reiterating a woman's right to choose to terminate her pregnancy prior to viability is protected by the Due Process Clause of the fourteenth amendment, acknowledged that in order to "protect the central right recognized by *Roe v. Wade* while at the same time accommodating the States' profound interest in potential life, the Court would employ the 'undue burden' analysis in determining whether a state regulation impermissibly infringes upon a woman's right to choose to terminate or continue her pregnancy before viability." 505 U.S. at 878, 112 S.Ct. at 2821, 120 L.Ed.2d at 711–715. The Court stated "an undue burden exists, and therefore a provision of law is invalid if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Id.,* at 837, 112 S.Ct. at 2799, 120 L.Ed.2d at 715. In discussing the application of the "undue burden" analysis to the context of state regulation of abortion procedures, the Court explained:

> The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it. Only where State regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause.... A finding of an undue burden is a shorthand for the conclusion that a State regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. In a statute which, while furthering the interest in potential life or some other valid State inter-

est, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate end.

*Id.,* at 874–77, 112 S.Ct. at 2819–20, 120 L.Ed.2d at 712–715.

In summarizing its decision in *Casey,* the Court made the following statement, *inter alia,* that is of particular importance in the present case:

> As with any medical procedure, the State may enact regulations to further the health or safety of a woman seeking an abortion. Unnecessary health regulations that have the purpose or effect of presenting a substantial obstacle to a woman seeking an abortion impose an undue burden on the right.

*Id.,* at 878, 112 S.Ct. at 2821, 120 L.Ed.2d at 716.

The plaintiffs in the present case contend that Chapter 321 has both the *purpose* and *effect* of placing a "substantial obstacle" in the path of a woman seeking an abortion of a non-viable fetus and must be, consistent with *Casey,* considered invalid. In support of their position, the plaintiffs argue that all available evidence shows that properly trained physician assistants are capable of performing first-trimester abortions with complication rates equal to or lower than corresponding rates for physicians. Consequently, the plaintiffs argue, the *purpose* of Chapter 321 is not the protection of women's health, but a misguided attempt to limit access to abortions in the State of Montana. Likewise, the plaintiffs argue, because the *effect* of Chapter 321 is to reduce the ability of a woman to obtain an abortion, the "physicians only" provision constitutes a substantial obstacle to the right of a woman to obtain an abortion of a non-viable fetus.

The State of Montana, on the other hand, asserts the "physicians only" provision of Chapter 321 is a legitimate exercise of the State's authority to foster the health and safety of a woman seeking an abortion in the State of Montana. In the opinion of the State, the "physicians only" requirement that survives scrutiny under the "undue burden" analysis enunciated in *Casey.* The fact the "physicians only" provision may have the in-

cidental effect of increasing the cost or decreasing the availability of abortion services, the State argues, is not fatal under *Casey's* "undue burden" analysis. Support for the State's argument is found in previous Supreme Court decisions. In *Connecticut v. Menillo,* 423 U.S. 9, 96 S.Ct. 170, 46 L.Ed.2d 152 (1975), the Supreme Court recognized that even in the first trimester of pregnancy, the State's interest in maternal health is sufficient to justify a requirement that an abortion be performed only "by medically competent personnel." 423 U.S. at 11, 96 S.Ct. at 171–172. In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Court observed that a "State may define the term 'physician' ... to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined." 410 U.S. at 165, 93 S.Ct. at 732–33.

The plaintiffs, however, implore the court not to rely upon the *dicta* enunciated in *Menillo* and *Roe* in determining whether the "physicians only" provision of Chapter 321 withstands analysis under the "undue burden" standard of *Casey.* The plaintiffs contend that focus is properly brought to bear upon the question of whether the State of Montana may legitimately preclude a woman from seeking an abortion from a "medically competent" health professional other than a licensed physician. *Menillo,* 423 U.S. at 10, 96 S.Ct. at 171.

There exists a paucity of case law addressing the precise issue presented in this case. The Sixth Circuit Court of Appeals in the case of *Birth Control Centers, Inc. v. Reizen,* 743 F.2d 352 (6th Cir.1984), was called upon to address the validity of a provision of the Public Health Code of Michigan, which provided that a physician performing surgery at a "free-standing surgical outpatient facility" ("FSOF") must:

> Possess adequate qualifications acquired by special training and experience to evaluate the medical ... conditions, potential risks, recognize and adequately treat emergency complications encountered in any procedure undertaken, and perform

the procedure in accordance with the usual standards of medical ... practice.

743 F.2d at 363.

In addressing the argument that the referenced provision of the Code required special training to perform surgery at an FSOF the court, based upon the State of Michigan's concession that Rule 35(1) does not require that only a specialist perform abortions. *Id.*, at 364. The court of appeals noted that "Michigan may constitutionally insist that only properly licensed physicians be permitted to perform abortions at FSOFs." *Id.*, at 364. The court in *Reizen* relied upon *dictum* stated by the Supreme Court in *Roe v. Wade* and *Menillo* that has previously been discussed.

The State, as would be expected, argues *Reizen* provides support for its position in this case. The plaintiffs, on the other hand, suggest *Reizen* is distinguishable and stands only for the proposition that because the Michigan Code provision at issue did not impose a requirement of special physician expertise to perform an abortion at an FSOF, the rule was consistent with the rationale of *Roe v. Wade*. *Reizen*, much like the Supreme Court cases discussed, does not address the precise issue before the court in the present case.

In assessing whether the plaintiffs are likely to ultimately succeed in their contention the "physicians only" provision of Chapter 321 constitutes an "unconstitutional burden" under the standard enunciated in *Casey*, the court remains mindful of the following statement in *Casey*:

> What is at stake is the woman's right to make the ultimate decision, not a right to be insulated from all others in doing so. Regulations which do no more than create a structural mechanism by which the State, ... may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose. (citation omitted) ... Regulations designed to foster the health of a woman seeking an abortion are valid if they do not constitute an undue burden.

505 U.S. at 877–78, 112 S.Ct. at 2821, 120 L.Ed.2d at 715.

As previously discussed, the State of Montana takes the position the "physicians only" provision embodies a reasonable attempt by the State of Montana to foster the health of a woman seeking an abortion. The ultimate inquiry, however, is whether the purpose or effect of the provision is to place a substantial obstacle in the path of a woman who chooses to exercise her right to seek an abortion before the fetus attains viability. *Casey*, 505 U.S. at 878, 112 S.Ct. at 2821, 120 L.Ed.2d at 715.

Undoubtedly, as the history attendant to the Montana Legislature's enactment of Chapter 321 reflects, not all of the legislators voting in favor of Chapter 321 were motivated by a desire to foster the health of a woman seeking an abortion. At the same time, this court cannot usurp the function of the Montana State Legislature by assuming, as the plaintiffs ask it to do, that none of the individual legislators approving the passage of Chapter 321 was motivated by a desire to foster the health of a woman seeking an abortion. In ascertaining whether the "purpose" of Chapter 321 constitutes an undue burden on the right of a woman seeking an abortion, the court's inquiry is narrow in view of the fact that "the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." *Casey*, 505 U.S. at 885, 112 S.Ct. at 2824, 120 L.Ed.2d at 720 (citing, *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955)). There exists insufficient evidence in the record to support the conclusion the requirement that a licensed physician perform an abortion would amount, "in practical terms, to a substantial obstacle to a woman seeking an abortion." *Id.* Accordingly, it is unlikely that the plaintiffs will prevail upon their suggestion that the requirement constitutes an "undue burden" within the meaning of *Casey*.

## C. EQUAL PROTECTION

The plaintiffs next challenge Chapter 321, and particularly the "physicians only" provi-

sion as violative of their right to equal protection of the law. Specifically, plaintiffs assert the "physicians only" provision operates to discriminate on the basis of gender, in that it selectively removes from the scope of practice of physician assistants a health care service sought only by women. The plaintiffs bolster their position with the argument that physician assistants have authority under Montana law to provide certain medical treatments for men which pose greater health risks than first-trimester abortions do to women. The State of Montana characterizes the equal protection challenge as meritless.

■ The parties, as might be expected, disagree upon the appropriate standard of scrutiny to which the "physicians only" provision of Chapter 321 should be subjected. The plaintiffs argue that because the provision is a gender-base restriction, the State of Montana bears the burden of showing "an exceedingly persuasive justification" for the classification. *Mississippi University of Women v. Hogan*, 458 U.S. 718, 724, 102 S.Ct. 3331, 3336, 73 L.Ed.2d 1090 (1982). Under this burden, the State is required to show "at least that the classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" 458 U.S. at 724, 102 S.Ct. at 3336 (citations omitted). The State of Montana argues persuasively, however, that the higher level of scrutiny suggested by the plaintiffs is inappropriate and that the validity of the "physicians only" provision is to be determined under the "rational basis" test.

■ The Supreme Court has consistently recognized that the statutory classification "neither proceeds along suspect lines nor infringes fundamental constitutional rights [,it] must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, ——, 113 S.Ct. 2096, 2101, 124 L.Ed.2d 211 (1993). Consistent with its argument pertaining to the "undue burden" analysis, the State reiterates the well-recognized proposition that the State has a legitimate interest in preserving potential life and protecting maternal health; a proposition recognized in *Roe v. Wade* itself and in subsequent cases dealing with the regulation of abortion procedures. *See, Beal v. Doe*, 432 U.S. 438, 445, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1976) (state interests described as "valid and important"); *Harris v. McRae*, 448 U.S. 297, 324, 100 S.Ct. 2671, 2692, 65 L.Ed.2d 784 (1980) (state's interest described as "important and legitimate"); *Casey*, 505 U.S. at 845–46, 112 S.Ct. at 2804, 120 L.Ed.2d at 711 ("the state has legitimate interest from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child").

A review of the many abortion regulation cases decided by the Supreme Court reflect the Court has ordinarily reviewed the challenged regulations under the rational basis test. Of particular importance is the Court's decision in *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993), wherein the Court rejected the claim that 42 U.S.C. § 1985(3) provides a federal cause of action against persons obstructing access to abortion clinics. In reaching its decision, the Court observed that opposition to voluntary abortion could not constitute invidious discrimination against women as a class. *Id.*

As a practical matter, the plaintiffs' equal protection challenge, when analyzed under the rational basis test, will rise or fall with its "undue burden" challenge. If the court determines that the "physicians only" provision constitutes an impermissible obstacle to the right of a woman to obtain a previability abortion, it would necessarily follow that there would exist no rational basis for the classification.

## D. BILL OF ATTAINDER

■ Article I, section 10, paragraph 1 of the Constitution prohibits States from enacting laws in the form of retroactive legislation that imposes punishment on specific individuals, laws commonly referred to as "Bills of Attainder." The plaintiffs argue the "physicians only" provision is, in its essence, a Bill of Attainder designed to impose retroactive punishment upon plaintiff Susan Cahill for

her having provided abortion services.[4] The plaintiffs argue the "physicians only" provision is punitive in nature because it inflicts punishment upon Cahill through the destruction of the practice she has developed over time.

In assessing whether a particular legislative act is violative of the Bill of Attainder Clause, the Supreme Court has "applied a functional test of the existence of punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further non-punitive legislative purposes. (citations omitted). Where such legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the decision makers." *Nixon v. Administrator General Services,* 433 U.S. 425, 475–76, 97 S.Ct. 2777, 2806, 53 L.Ed.2d 867 (1977). As previously discussed, the "physicians only" provision can be said to reasonably further a non-punitive legislative purpose, *i.e.,* fostering the health of a woman seeking an abortion. Consequently, it is unlikely that the plaintiffs will prevail in their suggestion that under the "functional" test, the provision constitutes an impermissible Bill of Attainder.

The second aspect of the plaintiffs' challenge based upon the Bill of Attainder Clause focuses upon the "motivational" test discussed in *Nixon,* which is described as follows: "inquiring whether the legislative record evinces a [legislative] intent to punish." 433 U.S. at 478, 97 S.Ct. at 2808. Application of this test requires the court to review, in detail, the legislative record attendant to the enactment of Chapter 321. The determinative inquiry is whether the legislative record reflects the existence of an intent to punish Cahill for her past conduct in performing abortions as opposed to the legitimate legislative intent to regulate the performance of abortion services in the

State. In judging the constitutionality of Chapter 321, the court may only look to its terms, to the intent expressed by the members of the Montana Legislature who voted its passage, and to the existence or nonexistence of a legitimate explanation for its apparent effect. *Nixon,* 433 U.S. at 484, 97 S.Ct. at 2811. While the court will conduct an extensive review of the legislative history attendant to the passage of Chapter 321, it is simply unpersuaded, at this point, that the plaintiffs will prevail upon the merits of this aspect of their argument, or that the hardships attendant the court's decision not to preserve the *status quo* is decidedly tipped in the plaintiffs' favor.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the plaintiffs' motion for preliminary injunctive relief is GRANTED to the extent the State of Montana, its agents and employees, are enjoined from enforcing Mont.Code Ann. § 50–20–109(1)(b) and Mont.Code Ann. § 50–20–109(4) as amended by Chapter 321, Section 2 of the Montana Session Laws (1995).

The plaintiffs' motion for preliminary injunctive relief is, however, DENIED to the extent it seeks to preclude the State of Montana from enforcing Mont.Code Ann. § 37–20–103 and Mont.Code Ann. § 50–20–109(1)(a) as amended by Chapter 321, Sections 1 and 2 of the Montana Session Laws (1995).

The parties are advised that the court shall forthwith enter a schedule for the final disposition of this action.

The Clerk of Court shall immediately notify the parties as to the entry of the present order.

4. The Bill of Attainder provision of the Constitution proscribes any legislative act "no matter what [its] form, that applie[s] either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v.*

*Lovett,* 328 U.S. 303, 315, 66 S.Ct. 1073, 1078–79, 90 L.Ed. 1252 (1946). As noted, Susan Cahill is the only physician assistant-certified who presently performs abortions in the State of Montana.