# MAZUREK, ATTORNEY GENERAL OF MONTANA *v.* ARMSTRONG ET AL.

No. 96–1104.   Decided June 16, 1997

Per Curiam.

In 1995, the Montana Legislature enacted a statute restricting the performance of abortions to licensed physicians. 1995 Mont. Laws, ch. 321, § 2 (codified at Mont. Code Ann. § 50–20–109 (1995)). Similar rules exist in 40 other States in the Nation.[1] The Montana law was challenged almost im-

---

[1] See Ala. Admin. Code Rules 420–5–1–.01(2)(k), 420–5–1–.03(2)(a) (Supp. 1990) (limiting performance of abortions to "physicians duly licensed in the State of Alabama;" which in turn requires meeting the criteria in Ala. Code § 34–24–70 (Supp. 1996)); Alaska Stat. Ann. §§ 08.64.200, 18.16.010(a)(1) (1996); Ark. Code Ann. § 5–61–101(a) (1993); *id.*, § 17–95–403 (1995); Cal. Health & Safety Code Ann. § 123405 (West 1996) (as interpreted under prior statutory designation in 74 Op. Cal. Atty. Gen. 101 (1991)); Colo. Rev. Stat. § 12–36–107 (1991 and Supp. 1996); *id.*, §§ 18–6–101(1), 18–6–102 (1986); Conn. Agencies Regs. § 19–13–D54(a) (1997) (limiting performance of abortions to "person[s] licensed to practice medicine and surgery in the State of Connecticut," which in turn requires meeting the criteria in Conn. Gen. Stat. § 20–10 (Supp. 1997)); Del. Code Ann., Tit. 24, §§ 1720, 1790(a) (Supp. 1996); Fla. Stat. §§ 390.001(1)(a), 390.001(3) (1993); *id.*, §§ 458.311, 459.0055 (1991 and Supp. 1997); Ga. Code Ann. § 16–12–141(a) (1996); *id.*, § 43–34–27 (1994); Haw. Rev. Stat. §§ 453–4, 453–16(a)(1) (1993); Idaho Code § 18–608 (1997); *id.*, §§ 54–1803(3), 54–1803(4) (1994); Ill. Comp. Stat., ch. 225, § 60/11 (1993); *id.*, ch. 720, §§ 510/2(2), 510/3.1 (1993); Ind. Code §§ 16–18–2–202, 16–18–2–282, 16–34–2–1(1)(A) (1993); *id.*, § 25–22.5–3–1 (1995); Iowa Code § 148.3 (Supp. 1997); *id.*, § 707.7 (Supp. 1997); Ky. Rev. Stat. Ann. §§ 311.571, 311.750 (Michie 1995); La. Rev. Stat. Ann. § 37:1272 (West Supp. 1997); *id.*, §§ 40:1299.35.1, 40:1299.35.2(A) (West 1992); Me. Rev. Stat. Ann., Tit. 22, § 1598(3)(A) (1992); *id.*, Tit. 32, §§ 2571, 3271 (Supp. 1996); Md. Health Code Ann. § 20–208 (1996); Md. Health Occ. Code Ann. § 14–307 (Supp. 1995); Mass. Gen. Laws, ch. 112, §§ 2, 12K, 12L, 12M (1996); Minn. Stat. §§ 145.412, subd. 1(1), 147.02 (1989) (limiting performance of abortions to licensed physicians and "physician[s] in training under the supervision of . . . licensed physician[s]"); Miss. Code Ann. § 73–25–3 (1995); *id.*, § 97–3–3(1) (1994) (as interpreted in *Spears* v. *State*, 278 So. 2d 443 (Miss. 1973)); Mo. Rev. Stat. §§ 188.015(5), 188.020 (1996); *id.*, § 334.031 (1989); Neb. Rev. Stat. § 28–335 (1995); *id.*, § 71–1,104 (Supp. 1996); Nev. Rev. Stat. § 442.250(1)(a) (1991); *id.*, § 630.160 (1995); N. J. Admin. Code § 13:35–4.2(b) (1997) (limiting performance of abortions to "physician[s] licensed to practice medicine and surgery in the State of New

mediately by respondents, who are a group of licensed physicians and one physician-assistant practicing in Montana. The District Court denied respondents' motion for a preliminary injunction, finding that they had not established any likelihood of prevailing on their claim that the law imposed an "undue burden" within the meaning of *Planned Parenthood of Southeastern Pa.* v. *Casey*, 505 U. S. 833 (1992). 906 F. Supp. 561, 567 (Mont. 1995). The Court of Appeals for the Ninth Circuit vacated the District Court's judgment, holding that respondents had shown a "fair chance of success on the merits" of their claim, and thus had met the threshold requirement for preliminary injunctive relief under Circuit precedent. 94 F. 3d 566, 567–568 (1996). The case was remanded to the District Court with instructions to reconsider the "balance of hardships" and determine whether entry of a preliminary injunction was ultimately warranted. *Ibid.*

Jersey," which in turn requires meeting the criteria in N. J. Stat. Ann. §§ 45:9–6, 45:9–7 (West 1991), and N. J. Stat. Ann. § 45:9–8 (West Supp. 1997)); N. M. Stat. Ann. §§ 30–5–1(C), 30–5–3 (1994) (as interpreted in N. M. Op. Atty. Gen. 90–19 (1990)); N. M. Stat. Ann. § 61–6–11 (1996); N. C. Gen. Stat. § 14–45.1(a) (1993); *id.*, § 90–9 (Supp. 1996); N. D. Cent. Code § 14–02.1–04(1) (1991); *id.*, § 43–17–18 (1993); Ohio Rev. Code Ann. § 2919.11 (1996); *id.*, §§ 4731.091, 4731.41 (1994); Okla. Stat., Tit. 59, § 493.1 (Supp. 1997); *id.*, Tit. 63, § 1–731(A) (1997); 18 Pa. Cons. Stat. §§ 3203, 3204(a) (1983 and Supp. 1997); 63 Pa. Cons. Stat. §§ 271.6, 422.28 (1996); R. I. Code R. 14.000.009, 600.1 (1996) (limiting performance of abortions to "physicians licensed under the [applicable provisions of Rhode Island law]," which in turn requires meeting the criteria in R. I. Gen. Laws § 5–37–2 (1995)); S. C. Code Ann. § 40–47–90 (Supp. 1996) (as implemented by S. C. Code Ann. Regs. §§ 81–80, 81–81, 81–90 (Supp. 1996)); S. C. Code Ann. §§ 44–41–10(b), 44–41–20 (1985); S. D. Codified Laws § 34–23A–1(4) (Supp. 1997); *id.*, §§ 34–23A–3, 34–23A–4, 34–23A–5 (1994); *id.*, § 36–4–11 (Supp. 1997); Tex. Health & Safety Code Ann. § 245.010(b) (1992); Tex. Rev. Civ. Stat. Ann., Art. 4495b, § 3.04 (Vernon Supp. 1997); Utah Code Ann. §§ 58–67–302, 58–68–302 (Supp. 1996); *id.*, § 76–7–302(1) (1995); Va. Code Ann. §§ 18.2–71, 18.2–72, 18.2–73, 18.2–74 (1996); *id.*, § 54.1–2930 (1994); Wash. Rev. Code §§ 9.02.110, 9.02.120, 9.02.170(4) (Supp. 1997); *id.*, §§ 18.57.020, 18.71.050 (Supp. 1997); Wis. Stat. § 448.01(5) (1988); *id.*, § 940.15(5) (1996); Wyo. Stat. § 33–26–303 (Supp. 1996); *id.*, § 35–6–111 (1994).

The District Court has not yet reconsidered the merits of the preliminary injunction motion, but it has entered (based on the parties' stipulations) an injunction pending appeal pursuant to Federal Rule of Civil Procedure 62(c), and has postponed its hearing on the preliminary injunction motion until our disposition of petitioner's certiorari petition. Order Granting Injunction Pending Appeal, No. CV 95–083–GF–PGH (Mont., Nov. 5, 1996), App. to Pet. for Cert. 31a–32a. As a consequence, Montana's physician-only requirement is unenforceable at the present time against respondent Susan Cahill, who is the only nonphysician licensed to perform abortions in Montana.

The Court of Appeals' conclusion that respondents had established a "fair chance of success on the merits" of their constitutional challenge is inconsistent with our treatment of the physician-only requirement at issue in *Casey.* That requirement involved only the provision of *information* to patients, and not the actual *performance* of abortions, yet we nonetheless held—overruling our prior holding in *Akron* v. *Akron Center for Reproductive Health, Inc.,* 462 U. S. 416, 448 (1983)—that the limitation to physicians was valid. *Casey, supra,* at 884–885. We found that "[s]ince there is no evidence on this record that requiring a doctor to give the information as provided by the statute would amount in practical terms to a *substantial obstacle to a woman seeking an abortion,* . . . it is not an undue burden." 505 U. S., at 884–885 (emphasis added). The District Court, quoting this precise passage, held: "There exists insufficient evidence in the record to support the conclusion [that] the requirement that a licensed physician perform an abortion would amount, 'in practical terms, to a *substantial obstacle to a woman seeking an abortion.'* Accordingly, it is unlikely that [respondents] will prevail upon their suggestion that the requirement constitutes an 'undue burden' within the meaning of *Casey.*" 906 F. Supp., at 567 (quoting *Casey, supra,* at 884 (emphasis added)).

The Court of Appeals never contested this District Court conclusion that there was "insufficient evidence" in the record that the requirement posed a " 'substantial obstacle to a woman seeking an abortion.'." Instead, it held that the physician-only requirement was arguably invalid because its *purpose*, according to the Court of Appeals, may have been to create a substantial obstacle to women seeking abortions. 94 F. 3d, at 567. But even assuming the correctness of the Court of Appeals' implicit premise—that a legislative *purpose* to interfere with the constitutionally protected right to abortion without the *effect* of interfering with that right (here it is uncontested that there was insufficient evidence of a "substantial obstacle" to abortion) could render the Montana law invalid—there is no basis for finding a vitiating legislative purpose here. We do not assume unconstitutional legislative intent even when statutes produce harmful results, see, *e. g., Washington* v. *Davis,* 426 U. S. 229, 246 (1976); much less do we assume it when the results are harmless. One searches the Court of Appeals' opinion in vain for any mention of any evidence suggesting an unlawful motive on the part of the Montana Legislature. If the motion at issue here were a defendant's motion for summary judgment, and if the plaintiff's only basis for proceeding with the suit were a claim of improper legislative purpose, one would demand *some* evidence of that improper purpose in order to avoid a nonsuit. And what is at issue here is not even a defendant's motion for summary judgment, but a plaintiff's motion for preliminary injunctive relief, as to which the requirement for substantial proof is much higher. "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995) (emphasis added; footnotes omitted).

Respondents claim in this Court that the Montana law must have had an invalid purpose because "all health evidence contradicts the claim that there is any health basis" for the law. Brief in Opposition 7. Respondents contend that "the only extant study comparing the complication rates for first-trimester abortions performed by [physician-assistants] with those for first-trimester abortions performed by physicians found no significant difference." *Ibid.* But this line of argument is squarely foreclosed by *Casey* itself. In the course of upholding the physician-only requirement at issue in that case, we emphasized that "[o]ur cases reflect the fact that the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, *even if an objective assessment might suggest that those same tasks could be performed by others.*" 505 U. S., at 885 (emphasis added). Respondents fall back on the fact that an antiabortion group drafted the Montana law. But that says nothing significant about the legislature's purpose in passing it.

Today's dissent, for its part, claims that "there is substantial evidence indicating that the sole purpose of the statute was to target a particular licensed professional" (respondent Susan Cahill). *Post*, at 979–980. It is true that the law "targeted" Cahill in the sense that she was the only nonphysician performing abortions at the time it was passed. But it is difficult to see how that helps rather than harms respondents' case. The dissent does not claim that this was an unconstitutional bill of attainder, nor was that the basis on which the Court of Appeals relied. (Such a contention would be implausible as applied to a provision so commonplace as to exist in 40 other States, see n. 1, *supra*.) And the basis on which the Court of Appeals *did* rely (that the purpose of the law may have been to create a "substantial obstacle" to abortion) is positively contradicted by the fact that only a single practitioner is affected. That is especially so since under the old scheme Cahill could only perform

abortions with a licensed physician (who also performs abortions) present, see Brief in Opposition 4, meaning that no woman seeking an abortion would be required by the new law to travel to a different facility than was previously available. All this strongly supports the District Court's finding, after hearing testimony, that there was insufficient evidence that the law created a "substantial obstacle" to abortion. And there is simply no evidence that the legislature intended the law to do what it plainly did not do.[2]

The Court of Appeals' decision is also contradicted by our repeated statements in past cases—none of which was so much as cited by the Court of Appeals, despite the District Court's discussion of two of them—that the performance of abortions may be restricted to physicians. We first expressed this view (although it was not necessary to our holding) in *Roe* v. *Wade*, 410 U. S. 113, 165 (1973), saying that "[t]he State may define the term 'physician,' . . . to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined." We reiterated this view in *Connecticut* v. *Menillo*, 423 U. S. 9, 11 (1975) *(per curiam)*, where, in the course of holding that the Federal Constitution posed no bar to the conviction of a person with no medical training for the performance of an abortion, we said that "prosecutions for abortions conducted by nonphysicians infringe upon no realm of personal privacy secured by the Constitution against state interference." Finally, in *Akron*, in the course of striking down a requirement that licensed physicians rather than other medical personnel provide specified information to patients (the holding overruled in *Casey*), we emphasized that our prior cases "left no doubt that, to ensure the safety of

---

[2] Since the record does not support a conclusion that "the legislature's predominant motive," *post*, at 980, was to create a "substantial obstacle" to abortion, it is quite unnecessary to address "whether the Court of Appeals misread this Court's opinions in *Miller* [v. *Johnson*, 515 U. S. 900 (1995),] and *Shaw*," *post*, at 981.

the abortion procedure, the States may mandate that only physicians perform abortions." 462 U. S., at 447 (citing *Roe, supra,* at 165, and *Menillo, supra,* at 11).

Respondents urge us to ignore the error in the Court of Appeals' judgment because the case comes to us prior to the entry of a final judgment in the lower courts. It is true that we are ordinarily reluctant to exercise our certiorari jurisdiction in that circumstance. See, *e. g.,* *Hamilton-Brown Shoe Co.* v. *Wolf Brothers & Co.,* 240 U. S. 251, 258 (1916). But our cases make clear that there is no absolute bar to review of nonfinal judgments of the lower federal courts, see, *e. g., Estelle* v. *Gamble,* 429 U. S. 97, 98 (1976); *United States* v. *General Motors Corp.,* 323 U. S. 373, 377 (1945); see also R. Stern, E. Gressman, S. Shapiro, & K. Geller, Supreme Court Practice § 4.18 (7th ed. 1993) (citing cases), and we conclude here that reversal of the Court of Appeals' judgment in a summary disposition is appropriate, for two reasons. First, as already noted, the Court of Appeals' decision is clearly erroneous under our precedents.[3] Second, the lower court's judgment has produced immediate consequences for Montana—in the form of a Rule 62(c) injunction against implementation of its law pending the District Court's resolution of respondents' motion for a preliminary injunction—and has created a real threat of such consequences for the six other States in the Ninth Circuit that have physician-only requirements.[4] Indeed, plaintiffs

---

[3] The dissent says that the Court of Appeals did not resolve any important issue of law in this case, but instead merely remanded to the District Court after "determin[ing] that a further inquiry into the facts [was] appropriate." *Post,* at 981. We disagree. The Court of Appeals expressly found, and it was necessary to its disposition, that respondents had shown a "fair chance of success" on their claim of undue burden. 94 F. 3d 566, 567–568 (CA9 1996). As already explained, that determination of law is inconsistent with our precedents.

[4] See Alaska Stat. Ann. §§ 08.64.200, 18.16.010(a)(1) (1996); Cal. Health & Safety Code Ann. § 123405 (West 1996) (as interpreted under prior statutory designation in 74 Op. Cal. Atty. Gen. 101 (1991));

in the Ninth Circuit seeking to challenge those States' laws may well be able to meet the threshold "fair chance of success" requirement for a preliminary injunction merely by alleging an improper purpose for the physician-only rule, since, as noted above, the Court of Appeals did not appear to rely on any evidence suggesting an unlawful motive on the part of the Montana Legislature.[5]

For the foregoing reasons, we grant the petition for certiorari, reverse the judgment of the Court of Appeals, and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

---

Haw. Rev. Stat. §§ 453–4, 453–16(a)(1) (1993); Idaho Code § 18–608 (1997); *id.*, §§ 54–1803(3), 54–1803(4) (1994); Nev. Rev. Stat. § 442.250(1)(a) (1991); *id.*, § 630.160 (1995); Wash. Rev. Code §§ 9.02.110, 9.02.120, 9.02.170(4) (Supp. 1997); *id.*, §§ 18.57.020, 18.71.050 (Supp. 1997).

[5] The dissent contends that some States which restrict the performance of abortions to licensed physicians may define "licensed physician" to include "physician-assistant" when the latter works under the former's supervision; thus, the dissent says, the Court of Appeals' decision may not in fact be inconsistent with the physician-only regimes of other States. *Post*, at 980–981. But the provisions of state law to which the dissent points reflect the general definition of what qualifies as the "authorized practice" of medicine, without making any specific reference to abortion. See, *e. g.*, Fla. Stat. §§ 458.303(1)(a), 458.327(1), 458.347 (1991 and Supp. 1997); *post*, at 980–981, n. 7 (citing statutes). Thus, for example, under Florida law, the performance of an abortion by a physician-assistant would not constitute "practic[ing] medicine . . . without a license" for purposes of the felony defined in Fla. Stat. Ann. § 458.327(1) (Supp. 1997), but there is no reason to think it would not violate the more specific prohibition on the performance of abortions by persons other than "a doctor of medicine or osteopathic medicine licensed by the state under chapter 458 or chapter 459," Fla. Stat. §§ 390.001(1)(a), 390.001(3) (1993). A formal opinion by the Attorney General of California has reached precisely this conclusion under that State's law: "[W]e cannot accept the notion that the Legislature meant to gainsay th[e] carefully tailored and highly specific determination [that abortions should be performed by licensed physicians] when it . . . adopted the general language of the Physician Assistant Practice Act." 74 Op. Cal. Atty. Gen. 101, 108 (1991).

JUSTICE STEVENS, with whom JUSTICE GINSBURG and JUSTICE BREYER join, dissenting.

The Court may ultimately prove to be correct in its conclusion that the Court of Appeals should have affirmed the District Court's refusal to preliminarily enjoin that portion of the statute disqualifying Susan Cahill from performing abortions in Montana. Nevertheless, I do not agree that this decision has sufficient importance to justify review of the merits at this preliminary stage of the proceeding. The background of the litigation and a comment on the Court of Appeals' discussion of legislative motive will help to explain why I am not persuaded that the Court's summary disposition is appropriate.

Since 1977, respondent Cahill, a licensed physician's assistant, has been performing first-trimester abortions in Kalispell, Montana, under the supervision of Dr. James Armstrong. She is the only nonphysician in Montana who performs abortions.

Since 1974, Montana law has provided that an abortion could be performed only by a licensed physician. See Mont. Code Ann. § 50–20–109(1)(a) (1995). Because the term "licensed physician," as used in that statute, was construed to include licensed physician assistants working under the direct supervision of a physician pursuant to a state approved plan,[1] it did not disqualify Cahill from continuing her work with Dr. Armstrong.

---

[1] See *Doe* v. *Esch*, No. CV–93–060–GF–PGH (Nov. 26, 1993), App. to Pet. for Cert. 33a (enjoining State from enforcing the licensed physician provision against a physician assistant, supervised by a licensed physician, who has received approval from the State Board of Medical Examiners to conduct abortions); see also Mont. Code Ann. § 37–20–403 (1993) (recognizing physician assistant as agent of the supervising physician); *id.*, § 37–20–303 (1995) (authorizing Board of Medical Examiners to approve physician assistant utilization plans detailing range of physician assistants' practice); 906 F. Supp. 561, 564 (Mont. 1995) (noting that the Montana

In 1995, the Montana Legislature enacted the statute at issue in this litigation. This statute banned physician assistants from performing abortions, provided that second-trimester abortions could only be performed in licensed hospitals, and prohibited any form of advertising of abortion services. See 1995 Mont. Laws, ch. 321. The record strongly indicates that the physician assistant provision was aimed at excluding one specific person—respondent Cahill—from the category of persons who could perform abortions. Although this is not apparent on the face of the statute, the parties agree that because Cahill is the only physician assistant who performs abortions in the State of Montana, she is the only person affected by the ban. Furthermore, the legislative hearings preceding the enactment of the statute contain numerous references to Cahill by name,[2] and the injunction against enforcement of this provision of the statute pending the appeal applies only to Cahill.[3]

The likelihood that the legislature may have enacted the statute for the sole purpose of targeting Cahill is suggested by the fact that the other two provisions in the 1995 Act— the hospitalization requirement and the advertising ban— were clearly invalid because they were reenactments of two provisions that already had been held unconstitutional in

Board of Medical Examiners construed its authority to include approval of Cahill's utilization plan allowing her to perform first-trimester abortions).

[2] See Minutes of Committee on Public Health, Welfare & Safety, Montana Senate, 54th Legislature (Mar. 10, 1995), reprinted in App. to Pet. for Cert. 50a–60a.

[3] "1. The injunction shall apply only to Plaintiff Susan Cahill and will allow her to practice under those terms in *effect* prior to October 1, 1995. Plaintiff Cahill must be supervised by a licensed physician and shall operate under the physician assistant-certified utilization plan previously approved by the Montana State Board of Medical Examiners that includes the performance of abortions pursuant to the provisions of Mont. Code Ann. Title 37, chapter 20. No other physician assistants-certified will be allowed to perform abortions in Montana under the terms of this stipulation or the Court's order." App. to Pet. for Cert. 32a.

earlier litigation,[4] and that the State, in this litigation, conceded to be unconstitutional.[5]  This history, together with Cahill's claim that the same antiabortion groups who had repeatedly targeted Cahill and Armstrong's practice were the proponents of the 1995 legislation, provided the basis for Cahill's argument that the statute was invalid as a bill of attainder, as well as an undue burden on the right to an abortion.

The discussion of legislative motive in the opinion of the Court of Appeals was a response to two decisions of this Court that suggest that such an inquiry is sometimes proper. In determining whether the "requirements serve no purpose other than to make abortions more difficult," within the meaning of *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833, 901 (1992), the Court of Appeals looked to our recent decisions in *Miller* v. *Johnson,* 515 U. S. 900 (1995), and *Shaw* v. *Hunt,* 517 U. S. 899 (1996).[6]  Today, the Court ignores those cases, but concludes that the record is barren of evidence of any improper motive.  As the discussion above indicates, this is not quite accurate; there is substantial evidence indicating that the sole purpose of the stat-

---

[4] In *Doe* v. *Esch, supra,* the court enjoined enforcement of the hospitalization requirement, and in *Doe* v. *Deschamps,* 461 F. Supp. 682 (Mont. 1976), the court held that the advertising and solicitation prohibition were unconstitutional.

[5] Respondents challenged these two provisions—along with the ban on performance of abortions by physician assistants, and the State did not contest that it was bound by the prior judgments from enforcing these prohibitions.  See 906 F. Supp., at 563.

[6] The Court of Appeals reasoned: "Legislative purpose to accomplish a constitutionally forbidden result may be found when that purpose was 'the predominant factor motivating the legislature's decision.' *Miller*[, 515 U. S., at 916].  Such a forbidden purpose may be gleaned both from the structure of the legislation and from examination of the process that led to its enactment.  *Shaw*[, 517 U. S., at 905–907].  A determination of purpose in the present case, then, may properly require an assessment of the totality of circumstances surrounding the enactment of Chapter 321, and whether that statute in fact can be regarded as serving a legitimate health function."  94 F. 3d 566. 567 (CA9 1996).

ute was to target a particular licensed professional. The statute removed the only physician assistant in the State who could perform abortions, yet there was no evidence that her practice posed any greater health risks than those performed by doctors with the assistance of unlicensed personnel. When one looks at the totality of circumstances surrounding the legislation, there is evidence from which one could conclude that the legislature's predominant motive was to make abortions more difficult.

In any event, the Court of Appeals did not reach the constitutional issue that is presented by this litigation. The Court of Appeals simply remanded this action to the District Court because it found that the District Court had unduly confined its analysis of what constitutes an impermissible purpose. Although the parties stipulated to the entry of a limited injunction pending appeal that temporarily protects Cahill and no one else, there is no indication yet from either the District Court or the Court of Appeals that either a permanent or preliminary injunction will ever be entered against enforcement of the physician-only provision of the statute.

As I read the decisions of the Court of Appeals and the District Court, this case involves an extremely narrow issue concerning the State's power to reduce by one the small number of professionals in Montana who can lawfully perform abortions in that State. I do not perceive the slightest threat to the 40 "physician only" laws cited at the outset of the Court's opinion, particularly since some of these States might allow licensed assistants to perform abortions under the supervision of a physician as was the practice in Montana prior to 1995.[7] Because physician assistants working under

_____

[7] Some of the States that have physician-only laws also have statutes that broadly define the medical duties that physicians can delegate to physician assistants. See, e. g., Conn. Gen. Stat. §§ 20–12a, 20–12d (Supp. 1997); Fla. Stat. § 458.347 (Supp. 1997); Ill. Comp. Stat., ch. 225, §§ 95/1, 95/4(3) (1993 and Supp. 1997); Ind. Code §§ 25–27.5–5–2, 25–27.5–6–3 (1995);

the supervision of a physician might be included in the definition of "physician," it is not clear at this stage that the Court of Appeals' decision challenges any of this Court's statements (for the most part dicta), *ante*, at 974–975, that a State may restrict the performance of abortions to physicians. I think the Court would be well advised to await further developments in the case before intervening. Surely, the Court of Appeals' determination that a further inquiry into the facts is appropriate before making a final decision on the motion for a preliminary injunction does not provide a proper basis for summary action in this Court.

Having decided to take the case, however, it does seem to me that the Court should provide some enlightenment as to whether the Court of Appeals misread this Court's opinions in *Miller* and *Shaw* v. *Hunt.*

In my judgment, the petition for certiorari should be denied.

---

Iowa Code §§ 148C.1, 148C.4 (1989); La. Rev. Stat. Ann. §§ 37:1360.22(5), 37:1360.28, 37:1360.31.A(1), 37:1360.31.B (West Supp. 1997); Me. Rev. Stat. Ann., Tit. 32, § 3270–A (Supp. 1996); Mass. Gen. Laws § 112:9E (1996); Neb. Rev. Stat. § 71–1,107.17 (1996); R. I. Gen. Laws § 5–54–8 (1995). My research indicates that Montana and California are the only States that explicitly prohibit physician assistants from performing abortions. See 74 Op. Cal. Atty. Gen. 101 (1991) (declining to construe the physician assistant statute to allow physician assistants to perform abortions).