# In the United States Court of Federal Claims

No. 20-356C
(Filed under seal March 31, 2020)
(Reissued April 2, 2020)†
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * *   *
                                     *
                                     *
ACTA, LLC,                           *
                                     *
            Plaintiff,               *
                                     *
      v.                             *
                                     *
THE UNITED STATES,                   *
                                     *
            Defendant,               *
                                     *
      and                            *
                                     *
UNCOMN, LLC,                         *
                                     *
            Defendant-Intervenor.    *
                                     *
                                     *
* * * * * * * * * * * * * * * * *   *
```

## ORDER

As discussed at yesterday's scheduling conference, plaintiff, ACTA, LLC, seeks a temporary restraining order to prevent USTRANSCOM (the Agency) from proceeding with performance of the contract awarded to intervenor UNCOMN that is the subject of this protest. The transition activities under that contract are scheduled for completion today (or at the latest sometime tomorrow), as this is apparently the last day of the predecessor contract. A temporary restraining order by its nature is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Jones Automation, Inc. v. United States*, 92 Fed. Cl. 368, 370 (2010) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972, (1997)). The legal standards governing

---

† This order was initially filed under seal. As the parties have agreed that it contains no protected information, it is reissued for public access with a few minor, non-substantive corrections.

an application for a temporary restraining order are the same as those that govern requests for preliminary injunctive relief. *Munilla Constr. Mgmt., LLC v. United States*, 130 Fed. Cl. 131, 135 (2016); *see also Jones Automation, Inc. v. United States*, 92 Fed. Cl. 368, 370 (2010). Preliminary injunctive relief requires that a plaintiff establish it is "likely to succeed on the merits, [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

As is generally the case in the context of any request for preliminary relief, the likelihood of success on the merits presents the most difficult issues for the Court. This is made only more so, in the case of a temporary restraining order, because the merits of plaintiff's arguments must be evaluated essentially *ex parte*, without the benefit of written opposition from the party against whom the order is sought. This matter concerns the price realism analysis conducted by the Agency, which resulted in the rejection of ACTA's proposal, and an award to UNCOMN, the only other offeror in contention. *See* Attach. L to Compl. at 4.

Plaintiff advances three merits arguments. Pl.'s Mem. In Supp. of Appl. for Temporary Restraining Order (Pl.'s Mem.) at 22–36. Its first claim is that, by not using its findings of unrealistically low labor rates to assess either the performance risk associated with ACTA's proposal or plaintiff's understanding of requirements, the Agency was effectively determining that ACTA was nonresponsible. *Id.* at 25–26. But because plaintiff is a small business, such responsibility matters must be referred by a procuring agency to the Small Business Administration (SBA) for determination. *Id.* at 25–27 (citing 15 U.S.C. § 637(b)(7); 48 C.F.R. § 19.602-1(a); *see generally* 13 C.F.R. § 125.5). In its decision, however, the Agency did not claim to be making a responsibility determination, but rather had an issue with an aspect of ACTA's proposal, namely allegedly unrealistically low pricing. Plaintiff points to a case from this court to support its claim that such pricing concerns amount to a de facto non-responsibility determination. Pl.'s Mem. at 25–29 (citing *KWR Constr., Inc. v. United States*, 124 Fed. Cl. 345, 362 (2015)).

This argument presents a close question on the merits. As *KWR* and the cases it relies upon make plain, the key inquiry in determining if an agency decision to reject a small business is a mere proposal evaluation decision or a de facto responsibility determination turns on whether the agency's concern was with what was proposed or with the offeror's ability to perform as proposed. *KWR*, 124 Fed Cl. at 361 (citing *PlanetSpace Inc. v. United States,* 96 Fed. Cl. 119, 128 (2010)). More particularly, if this concern with ability to perform led an agency not to conduct any tradeoff or comparative analysis, but merely to reject the proposal out of hand, that can seemingly transform the matter into a de facto responsibility determination, requiring referral to the SBA. *KWR*, 124 Fed. Cl. at 361–62. From a brief review of the Source Selection Decision Document it does appear that the Agency did remove

ACTA from consideration based primarily on a concern about its ability to perform as proposed. *See* Ex. L to ECF 15. Based on the limited record the Court has before it, it sems distinctly possible that plaintiff will prevail on this issue. This conclusion, of course, is based on the extremely limited record currently available, and without the benefit of a written response from the government or intervenor.

Regarding the second argument, plaintiff contends that the Agency failed to conduct or document a proper price realism analysis of the costs of the winning bidder, intervenor UNCOMN. Pl.'s Mem. at 29–31. The merits of this argument are almost unreviewable at this stage of the proceedings, for the simple reason that most of the cost analysis that relates to parties other than plaintiff does not appear in the exhibits filed in support of the application for a temporary restraining order. It appears that the Agency declined to produce those documents before the Government Accountability Office (GAO) in the protest plaintiff filed there, and the GAO declined to order such records produced. Based on the allegations in the complaint, however, plaintiff appears unlikely to prevail on this point. Essentially, the Agency faulted plaintiff for proposing unrealistically low rates for 20 out of 26 labor positions, but ACTA contends that UNCOMN had two rates that seem to be unrealistically low---arguably to a greater extent than ACTA's were. *See* Compl. ¶ 47. Without seeing the Agency's analysis of the UNCOMN labor rates, the Court cannot definitively reject this claim of unequal treatment. But faulting one offeror for proposing unrealistically-low prices for the vast majority of labor rates, and not faulting another for underpricing less than 10 percent of these rates, does not on its face seem to be unequal treatment. Accordingly, the Court finds that the plaintiff has failed to demonstrate a likelihood of success on the merits under this argument.

In its final merits claim, plaintiff disputes the reasonableness of the Agency's reliance on historical prices and on a contract set aside for section 8(a) concerns as benchmarks against which to evaluate prices for realism. Pl.'s Mem. at 31–36. These sorts of detail-specific claims disputing the rationality of agency decisions in an area in which agencies are afforded a great deal of discretion are particularly challenging for the Court to evaluate on a very limited record and entirely one-sided briefing. Agencies are afforded great latitude when deciding what methods to employ in a cost realism analysis if they do not commit to a particular methodology in the solicitation, which is the case here. *DMS All-Star Joint Venture v. United States*, 90 Fed. Cl. 653, 663 (2010) (citing *Labat-Anderson Inc. v. United States*, 50 Fed. Cl. 99, 106 (2001)). In light of this very deferential standard, issues concerning the suitability of using one set of data as opposed to other available sets are particularly difficult grounds upon which bid protesters can make their stand. Without a developed record and based on mere speculation and unsupported allegations regarding the creation of the government estimate and the cost structures of various small business types, the Court cannot at this time find it likely that ACTA will prevail on this aspect of the protest.

Having found a decent probability of success on the merits with respect to ACTA's SBA referral claim, the Court will now consider the remaining factors governing temporary injunctive relief. With regard to irreparable injury, under the facts of this case, plaintiff can only show a very limited harm from not being afforded relief today, as opposed to less than three weeks from now when its preliminary injunction motion will be heard. This is mainly because, after losing at the GAO on March 17, 2020, ACTA did not file its protest here until the late afternoon of last Friday, March 27, 2020. In the interim, the Agency apparently issued the notice to proceed on March 18, and ACTA did not submit its prefiling notice until March 23. Neither the prefiling notice nor the application at issue noted that the predecessor contract, under which ACTA is a subcontractor, had been extended only through March 31. The Court learned of the significance of that date only late yesterday afternoon, at what was expected to be but a scheduling conference.

By yesterday, it seems that job offers had been made to some 80 percent of the incumbent workforce, and UNCOMN is now in position as the only contractor that can prevent an interruption of a critical service. Had the protest been filed earlier last week, the ability of the Agency to respond to preliminary relief by securing either a further extension of the incumbent contract or a bridge contract could have been feasible. But as things now stand, it seems that the loss of some of ACTA's employees, and the gain of some experience on the part of UNCOMN, is now unavoidable as a practical matter. The Court is not persuaded that this change in the status quo, much of which occurred before the matter was brought before us, will preclude its ability to fashion effective injunctive relief for plaintiff, if this proves merited. Since the Agency proceeded with the transition after receiving the prefiling notice, the protest, and the preliminary injunction request, this Court will give little, if any, weight to those hardships the government essentially brought upon itself when it declined to stay the award voluntarily. *See GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 491 (2012).

What the previous two weeks have shown, however, is that the Agency can completely transition to a new contract within such a short period. Thus, if the Court finds the rejection of ACTA's proposal to have been improper, it expects that two weeks, plus a reasonable time to execute an alternative contractual arrangement, should be ample lead time before an ordered termination of the UNCOMN contract, should it come to that. At bottom, the only actual injury to plaintiff is the gain in experience that UNCOMN will garner, as ACTA has no right to expect that it can enjoy incumbency benefits under an expiring contract. But the injury to the government outweighs this, with too little time left for an alternative contracting vehicle to avoid a disruption in service. The public interest would not be served by such an interruption. For these reasons, the application for a temporary restraining order is **DENIED.**

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Senior Judge