**MICHIGAN BELL TELEPHONE CO.,**
d/b/a **Ameritech Michigan, Inc.,**
**Plaintiff,**

v.

**MFS INTELENET OF MICHIGAN, INC., TCG Detroit, Brooks Fiber Communications of Michigan, Inc., MCI Telecommunications Corp., MCImetro Access Transmission Services, Inc., AT & T Communications of Michigan, Inc., BRE Communications, LLC, and John G. Strand, John C. Shea, and David A. Svanda, Commissioners of the Michigan Public Service Commission, in their official capacities, Defendants.**

**No. 5:98 CV 18.**

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 26, 1998.

Theodore A. Livingston, Mayer, Brown & Platt, Chicago, IL, Michael A. Holmes, Ameritech Michigan, Detroit, MI, Edward R. Becker, John M. Dempsey, Dickinson Wright P.L.L.C., Lansing, MI, for Michigan Bell Telephone Company dba Ameritech Michigan, Inc., plaintiffs.

Richard M. Rindler, Swidler & Berlin, Washington, DC, William R. Ralls, Butzel Long, Norman C. Witte, Lansing, MI, for Defendant MFS Intelenet of Michigan, Inc.

Douglas W. Trabaris, Teleport Communications Group, Inc., Chicago, IL, Roderick S. Coy, Stephen J. Videto, Clark Hill, P.L.C., Okemos, MI, for Defendant TCG Detroit.

William R. Ralls, Butzel Long, Norman C. Witte, Lansing, MI, for Defendant Brooks Fiber Communications of Michigan, Inc.

Lori M. Silsbury, Dykema Gossett, PLLC, Detroit, Lori M. Silsbury, Albert Ernst, Dykema Gossett, Lansing, MI, for Defendants MCI Telecommunications Corp., MCIMetro Access Transmission Services, Inc.

Arthur J. LeVasseur, George Hogg, Jr., Sidney M. Berman, Fischer, Franklin & Ford, Detroit, MI, for Defendant AT&T Communications of Michigan, Inc.

Richard C. Gould, Grandville, MI, for Defendant BRE Communications, L.L.C.

David M. Gadaleto, Asst. Atty. General, Frank J. Kelley, Attorney General, Liquor Control Division, Secondary Complex, Lansing, MI, Don L. Keskey, Asst. Atty. General, David A. Voges, Asst. Atty. Gen., Frank J. Kelley, Attorney General, Public Service Division, Lansing, MI, for Defendants John G. Strand, John C. Shea, David A. Svanda.

## *OPINION*

ENSLEN, Chief Judge.

Plaintiff Michigan Bell Telephone Company, d/b/a Ameritech Michigan, Inc. [hereinafter Ameritech], filed this action pursuant to the Federal Telecommunications Act of 1996. Plaintiff seeks declaratory and injunctive relief to prevent enforcement of an Order issued by the Defendant Commissioners of the Michigan Public Service Commission (MPSC) interpreting interconnection agreements between itself and the Defendant competing local telecommunications carriers. This matter is before the Court on Plaintiff's Motions for Leave to Deposit Funds with the Court, for Approval of Supersedeas Bond, for Stay Pending Review, for Preliminary Injunction, and for Primary Jurisdiction Referral. Upon review, all but one of Plaintiff's Motions are denied. The remaining motion, Plaintiff's Motion for Primary Jurisdiction Referral, is granted in part.

## I. BACKGROUND

The Telecommunications Act of 1996, Pub.L. 104–104, 1996 U.S.C.C.A.N. (110 Stat. 56) 10 (codified as amended in scattered sections of Title 47 of the United States Code)

[hereinafter "the Telecom Act" or "the Act"], was designed to inject competition into the traditionally monopolistic area of local telephone service. To effectuate that goal, the Act requires, among other things, that incumbent local telephone service providers (referred to as local exchange providers or LECs) to enter into interconnection agreements with competing LECs.[1] In 1997, as a result of the mandate imposed by the Act, Plaintiff Ameritech entered into a number of interconnection agreements with various competing LECs. Those agreements included provisions requiring the Parties to pay reciprocal compensation to one another for local calls initiated by the customer of one Party which were terminated by a customer of the other Party, as also required by the Act. 47 U.S.C. § 251(b)(5).[2] For over a year, both Ameritech and the Defendant competing LECs paid such compensation for calls made to Internet Service Providers (ISPs) from an end user within the same local calling area. This case arose when Ameritech, asserting that all calls to ISPs are interstate calls, stopped paying reciprocal compensation to the Defendant competing LECs for those calls.

In response to Plaintiff's unilateral decision to cease payment, each of the Defendant LECs either filed individual complaints with the Michigan Public Service Commission or intervened in such actions. Ultimately, the complaints were consolidated and the Commissioners found in favor of the Defendant LECs. On January 28, 1998, the Commissioners issued an Order instructing Plaintiff Ameritech to "cease and desist" withholding reciprocal compensation from the competing LECs for calls made to ISPs. The Commissioners ordered Plaintiff to release the over $6 Million in back compensation within 10 days, to pay all future charges, and to pay the competing LECs attorney's fees.

On February 2, 1998, Ameritech filed a motion with the MPSC to stay further proceedings while it sought judicial review of the January 28 Order. No action was taken on that motion. Ameritech then filed this action on February 6, 1998, nine days after the MPSC Order was issued. On February 9, 1998, Plaintiff filed a Motion for a Stay Pending Appeal which this Court construed as a Motion for Temporary Restraining Order and denied for failure to demonstrate irreparable harm. *Michigan Bell v. MFS Intelenet of Michigan, Inc.*, No. 5:98CV18, slip op. at 2 (W.D.Mich. Feb. 11, 1998) (Order issued by Judge Robert Holmes Bell, on behalf of Chief Judge Enslen, docket # 3). On February 12, 1998, Plaintiff filed a Motion for Leave to Deposit Funds with the Court and a Motion for Approval of Supersedeas Bond and Stay Pending Appeal. On May 19, 1998, Plaintiff filed a Motion for Preliminary Injunction. Finally, on August 18, 1998, Plaintiff filed a Motion for Primary Jurisdiction Referral.[3] These motions are presently pending before the Court.

1. Having recently explored the purpose and structure of the Telecom Act in an earlier Opinion filed in this case, the Court declines to revisit those issues here. *See Michigan Bell v. MFS Intelenet of Michigan, Inc.*, 16 F.Supp.2d 817, 817–820, No. 5:98CV18, 1998 WL 413749, *1–*2 (W.D.Mich. July 21, 1998).

2. Section 251(b)(5) provides that all LECs have a "duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." The corresponding regulations define reciprocal compensation as an "arrangement between two carriers ... in which each of the two carriers receives compensation from the other carrier for the transport and termination on each carrier's network facilities of local telecommunications traffic that originates on the network facilities of the other carrier." 47 C.F.R. § 51.701(e) (1998). "The reciprocal compensation system functions in the following manner: a local caller pays charges to her LEC which originates the call. In turn, the originating carrier must compensate the terminating LEC for completing the call. *See In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, CC Dockets 96–98 et al., First Report and Order, 11 F.C.C. Rcd. 15499, P 1034 (Aug. 8, 1996). Reciprocal compensation applies only to 'local telecommunications traffic.' 47 C.F.R. § 51.701(a) (1998). Local telecommunications traffic is defined as traffic that 'originates and terminates within a local service area established by the state commission.'" *Illinois Bell Tel. Co., d/b/a Ameritech v. WorldCom Tech.*, No. 98 C 1925, 1998 WL 419493, *4 (N.D.Ill. July 23, 1998).

3. The Parties have filed numerous other motions. They, however, are not pertinent to this ruling and, therefore, will be discussed herein.

## II. ANALYSIS

### A. Rule 62 Motion

■ Arguing that the instant case is, in effect, an appeal of a money judgment, Plaintiff asserts that it is entitled as a matter of right to a stay pending appeal pursuant to Rule 62(d). Defendants counter, however, that Rule 62(d) is inapplicable because the Commissioner's Order provides injunctive relief in that it requires Plaintiff to "cease and desist from failing to pay reciprocal compensation in accordance with its interconnection agreements." If any section of the Rule applies, Defendants continue, it would be 62(c) governing injunctions.[4] *See Wisconsin Bell v. TCG Milwaukee, Inc.,* No. 98–C–366–C, slip op. at 6 (W.D. Wis. June 10, 1998). In addition, Defendants point out, and Plaintiff concedes, that Rule 62 is not directly applicable to the instant situation because it provides for a stay during the appeal from a federal court judgment, not a state administrative order. *Id.* Finding both of Defendants' arguments persuasive, the Court holds that Rule 62(d) specifically, and Rule 62 in general, are not applicable to the instant case. Plaintiff's Motion for a stay pursuant to Rule 62 is, therefore, denied.

### B. Motion for Preliminary Injunction

■ Evidently in anticipation of just such a ruling, Plaintiff filed an alternative motion for stay pursuant to Federal Rule of Civil Procedure 65(a). A preliminary injunction is an extraordinary and drastic remedy not to be imposed unless the movant has, by a clear showing, met the burden of persuasion. *Mazurek v. Armstrong,* 520 U.S. 968, 117 S.Ct. 1865, 1867, 138 L.Ed.2d 162 (1997) (citation omitted). In considering such a motion, the district court must balance the following four factors: 1) the movant's likelihood of success on the merits; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public

interest would be served by issuance of the injunction. *Connection Distributing Co. v. Reno,* 154 F.3d 281, 287 (6th Cir.1998). "These factors are to be balanced, not prerequisites which must be met." *Mercy Health Servs. v. 1199 Health & Human Serv. Employees Union,* 888 F.Supp. 828, 838 (W.D.Mich.1995) (citing *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985)).

### 1. Likelihood of Success on the Merits

■ "In general, the probability of success on the merits that must be shown is inversely proportional to the degree of irreparable injury plaintiff will suffer absent an injunction." *Mercy Health Servs.,* 888 F.Supp. at 838. However, "the demonstration of a mere 'possibility' of success on the merits is not sufficient …." *Id.* (quoting *Ohio ex rel. Celebrezze v. Nuclear·Regulatory Comm'n,* 812 F.2d 288, 290 (6th Cir.1987)). "Ordinarily the party seeking a stay must show a strong or substantial likelihood of success. However, at a minimum the movant must show 'serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if a stay is issued.'" *Id.* (quoting *Celebrezze,* 812 F.2d at 290).

The sole substantive question in this case is whether calls made from an individual telecommunications customer to an ISP within the same local calling area are "local" calls for which the Parties must pay reciprocal compensation. Plaintiff argues that, because: 1) calls to ISPs are mechanically akin to exchange access calls made to long distance carriers, 2) those calls involve communications with interstate, and often international locations, and 3) during the past 15 years, the Federal Communications Commission (FCC) has repeatedly noted that calls to ISPs are "jurisdictionally interstate" calls, calls made to ISPs are interstate calls for which Ameritech is not required to pay reciprocal compensation. Noting that every federal court and state administrative agency to

---

4. **(c) Injunction Pending Appeal.** When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party. . . .

confront this issue has reached the contrary conclusion and that both the FCC and Ameritech itself treat calls to ISPs as local calls for billing purposes, Defendants counter that Plaintiff's chance of success on the merits is slim to nonexistent.

Having reviewed Judge Coar's decision in *Illinois Bell Tel. Co., d/b/a Ameritech v. WorldCom Tech.*, No. 98 C 1925, 1998 WL 419493, \*8–\*13 (N.D.Ill. July 23, 1998),[5] and found it persuasive, and noting that every one of the 19 regulatory agencies with expertise in this area that has addressed this specific issue has sided with Defendants, this Court finds it unlikely that Plaintiff will succeed on the merits of its claim. In addition, support for the holdings of these courts and agencies is found in the fact that both the FCC and Ameritech itself treat these calls as local calls. In the instant case, Ameritech bills its customers for such calls as local calls and the FCC, while noting that calls to ISPs are akin to exchange access calls made to long distance carriers, treats ISPs as end users within the local calling area for regulatory billing purposes. Pl. Br. Mot. Prelim. Inj. at 14–15. Furthermore, Ameritech itself apparently agreed with the contrary position when it was paying reciprocal compensation for over a year before the start of this controversy. Having considered the Parties' arguments, the Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits. Noting, however, that the FCC language on the subject is inconsistent, *Illinois Bell Tel. Co.*, 1998 WL 419493 at \*8, and that the FCC has acknowledged this specific question is presently unresolved by taking it up for review, *Ex Parte Procedures Regarding Requests for Clarification of the Commission's Rules Regarding Reciprocal Compensation for Information Service Provider Traffic*, FCC Pub. Not. 96–98, Rel No. DA 98–1641, 1998 FCC LEXIS 4191 (Aug. 17, 1998), the Court nevertheless finds that Plaintiff has raised a serious question as to the appropriate resolution of this legal issue.

## 2. Irreparable Harm

■ To demonstrate irreparable harm, the moving party must identify "a noncompensable injury for which there is no legal measure of damages, or none that can be determined with a sufficient degree of certainty ...." *Nixon v. Kent County*, 790 F.Supp. 738, 749 (W.D.Mich.1992). Thus, monetary losses will generally not be considered irreparable. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir.1992). In evaluating the injury that may occur in the absence of an injunction, the Court should consider the substantiality of the injury alleged, the likelihood of its occurrence, and the adequacy of the proof provided. *Mercy Health Servs.*, 888 F.Supp. at 838.

Plaintiff asserts that there are three types of irreparable harm which it will suffer if an injunction is not granted: 1) the loss of customers and goodwill; 2) the subversion of interconnection agreement negotiations; and 3) harm to Ameritech's public switched network. While Plaintiff is correct that, under some circumstances, loss of customers and goodwill may serve as a basis for finding irreparable harm, such harm is often too speculative or insubstantial to justify preliminary injunctive relief. Such is the case here. Although Plaintiff argues that it has submitted substantial evidence that such harms will be substantial and will undoubtedly befall it, Ameritech offers only the self-serving affidavit of one of its own employees, Neil E. Cox, to support this conclusion. But even assuming that Mr. Cox's affidavit is completely accurate, the Court must conclude that this harm is too speculative to advocate in favor of granting Plaintiff's motion. Indeed, beyond failing to attempt to quantify the harm, Mr. Cox does not even allege it will be substantial; rather, he only states: "[i]t is impossible to project how many customers or how much goodwill Ameritech Michigan will

---

5. See also *Southwestern Bell Tel. Co. v. Public Utility Comm'n*, No. 98 CA 043, slip op. at 14–25 (W.D. Tex. June 16, 1998) (holding that calls to an ISP are "local traffic" and therefore eligible for reciprocal compensation); *U.S. West Comm. Inc. v. MFS Intelenet, Inc.*, No. C97–222WD, slip op. at 8, 1998 WL 350588 (W.D.Wash. Jan.6

1998) (holding state commission had not acted arbitrarily and capriciously in deciding that LECs continue to pay and receive reciprocal compensation for calls made to Enhanced Service Providers, which include Internet Service Providers, within a local calling area).

lose if the MPSC Order is not stayed." Furthermore, the Court concurs with Judge Crabb's assessment of Plaintiff's argument on this point, and finds it unlikely that the Defendant LECs will engage in a whirlwind campaign to sign up ISP business when their legal footing is unsure. *Wisconsin Bell v. TCG Milwaukee, Inc.,* No. 98–C–366–C, slip op. at 7 (W.D. Wis. June 10, 1998).[6] Moreover, even assuming that Plaintiff will experience some loss of customer goodwill, a decrease in its bargaining power and some degradation in its public switched network, Plaintiff has not demonstrated that these harms would be sufficiently substantial or likely to occur so as to compensate for its weak showing on the first prong of this test. In any event, the Court concludes that this prong of the test militates against granting the injunction.

### 3. Harm to Others and the Public Interest

With regard to the third prong of this test, Defendants argue that Plaintiff's continued withholding of reciprocal compensation is delaying Defendants' competitive entry into the local telecommunications market, thereby harming Defendants and the public by frustrating the very purpose of the Telecom Act. By preventing the new entrants into the local communications market from receiving compensation on which they came to rely during the year when Plaintiff chose to pay the costs at issue, the incumbent Plaintiff has in effect blocked the competition the Act seeks to encourage. As a result, the Court finds that these final two factors also weigh against Plaintiff's request for injunctive relief.

Having found that each factor of the test for preliminary injunctive relief militates against enjoining the MPSC Order requiring Plaintiff to cease and desist from failing to pay reciprocal compensation in accordance with its interconnection agreements, the Court denies Plaintiff's Motion.

### C. Motion for Stay Pending FCC Decision

■ In addition to repeatedly requesting a stay of the MPSC Order, Plaintiff has also recently filed a motion requesting that the Court either refer this matter to the FCC or stay its own proceedings pending the issuance of the FCC's decision on the specific issue of whether calls to ISPs are local for the purpose of reciprocal compensation under the § 251(b)(5) of the Telecom Act. As noted above, on August 17, 1998, the FCC confirmed that it is presently reviewing the very issue on which this case turns. *Ex Parte Procedures Regarding Requests for Clarification of the Commission's Rules Regarding Reciprocal Compensation for Information Service Provider Traffic,* Public Notice, CC docket No. 96–98, 1998 FCC LEXIS 4191. Because the FCC's interpretation of this legal question is entitled to due deference by this Court, *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969); *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), it may well have an effect on the outcome of this case. As a result, the Court finds that a stay of this Court's proceedings in this case is appropriate pending the issuance of the FCC's ruling

---

**6.** In addressing these precise issues, Judge Barbara Crabb stated the following:

> Plaintiff attempts to establish three independent irreparable harms it will suffer if the stay is not issued: a loss of customers and goodwill, the subversion of interconnection agreement negotiations and increased strains on Wisconsin networks. Each of these arguments is based on the premise that defendant TCG and other local carrier competitors will rely on the reciprocal compensation payments ordered by defendant commission either to under bid plaintiff in obtaining the business of internet service providers or to gain a strategic advantage in current negotiations for interconnection agreements. However, the stay at issue

controls the availability of reciprocal compensation only during the relatively short period it will take to reach a final decision on the matter .... It is unlikely that defendant TCG or plaintiff's other competitors will target ISP customers or drop their rates to those customers in reliance on reciprocal compensation payments when those payments could be lost in a matter of weeks. Similarly, because the legal status of reciprocal compensation requirements for ISP business remains unknown irrespective of the stay, issuance or denial of the stay should not benefit either parties' bargaining position in negotiations for new interconnection agreements.

on this question. *See Wysinger v. Benton Harbor,* 968 F.Supp. 349, 355 (W.D.Mich. 1997). Plaintiff's Motion will, therefore, be granted in part.

## IV. Conclusion

For the foregoing reasons, Plaintiff Ameritech's Motions for Stay pursuant to Rule 62 and for Preliminary Injunction pursuant to Rule 65 are denied. As a result, Plaintiff's Motion for Approval of Supersedeas Bond and for Leave to Deposit Funds with the Court are deemed moot. Finally, Plaintiff's Motion for Primary Jurisdiction Referral is granted insofar as the Court shall stay its proceedings pending the issuance of the FCC decision regarding reciprocal compensation for calls made to Internet Service Providers. Plaintiff is instructed to alert the Court when that decision has been rendered.

### *ORDER*

In accordance with the Opinion entered this date,

**IT IS HEREBY ORDERED** that the Defendant TCG Detroit's Motion for Leave to File Second Supplement filed April 30, 1998 (dkt.# 59), is **GRANTED;**

**IT IS FURTHER ORDERED** that Plaintiff Motion for Approval of Supersedeas Bond and for Stay Pending Review, filed February 12, 1998 (dkt.# 7), is **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction Pending Review of Commissioner's Order, filed May 19, 1998 (dkt.# 66), is **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Deposit Funds with the Court, filed February 12, 1998 (dkt.# 8), is **DENIED as moot;**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Primary Jurisdiction Referral, filed August 18, 1998 (dkt.# 119), is **GRANTED in part;**

**IT IS FURTHER ORDERED** that Plaintiff Ameritech's Motion for Decision on Pending Motions, filed August 17, 1998 (dkt.# 117), is **DENIED as moot;**

**IT IS FURTHER ORDERED** that this matter is stayed pending the issuance of the

Federal Communications Commission's (FCC) ruling on the Local Competition proceeding, CC Docket No. 96–98, which includes the record developed in CCB/CPD 97–30, entitled *Requests for Clarification of the Commission's Rules Regarding Reciprocal Compensation for Information Service Providers;*

**IT IS FURTHER ORDERED** that Plaintiff Ameritech shall notify the Court within fourteen (14) days of the date on which the FCC ruling is issued. No motions further motions should be filed in this matter until such time as the Court has had an opportunity to review the FCC ruling.