Olivier **BANCOULT** et al., Plaintiffs,

v.

**Robert S. McNAMARA
et al., Defendants.**

**Civil Action No. 01–2629 RMU.**

United States District Court,
District of Columbia.

Sept. 30, 2002.

Michael Tigar, Washington, DC, for plaintiffs.

Cynthia T. Andreason, Katherine S. Kamen, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Washington, DC, for defendant DCDM.

Harry M. Reasoner, Scott J. Atlas, Vinson & Elkins, L.L.P., Houston, TX, John D. Taurman, Michael R. Charness, Vinson & Elkins, L.L.P., Washington, DC, for defendant Halliburton.

Richard Montague, Washington, DC, for individual federal defendants.

Elaine Marzetta Lacy, Washington, DC, for defendant United States.

### *MEMORANDUM OPINION*

URBINA, District Judge.

ORDERING FURTHER BRIEFING ON DEFENDANT UNITED STATES' MOTION TO DISMISS; GRANTING DEFENDANT DCDM'S MOTION TO DISMISS; DENYING THE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION; AND STRIKING THE PLAINTIFFS' MOTION FOR AN ANTISUIT INJUNCTION AND SANCTIONS AGAINST DEFENDANT DCDM

### I. INTRODUCTION

This action takes us to the middle of the Indian Ocean, to the tiny islands of the Chagos Archipelago ("Chagos"). The plaintiffs are indigenous Chagossians, their survivors, and their direct descendants ("the plaintiffs"). They bring this action

against the United States and De Chazal Du Mee & CIE ("DCDM") (collectively, "the defendants").[1] The plaintiffs now move for a preliminary injunction barring the defendants from engaging in allegedly discriminatory policies and practices that deny the plaintiffs access to Chagos and to employment on Diego Garcia, one of the Chagos islands. The defendants move to dismiss the complaint on jurisdictional grounds. Defendant United States argues that this court lacks subject-matter jurisdiction based on sovereign immunity, the political question doctrine, and lack of standing. Defendant DCDM, a Mauritian corporation, asks the court to dismiss the complaint based on ineffective service of process and lack of personal jurisdiction. Separately, the plaintiffs also move for an antisuit injunction and sanctions against DCDM. For the reasons that follow, the court orders further briefing on defendant United States' motion to dismiss, grants defendant DCDM's motion to dismiss, denies the plaintiffs' motion for a preliminary injunction, and strikes the plaintiffs' motion for an antisuit injunction and sanctions against defendant DCDM.

## II. BACKGROUND

### A. Factual Background[2]

Chagos is a grouping of small islands in the middle of the Indian Ocean, at least 1,000 miles away from the nearest landmasses of India, Mauritius, Australia, and the Gulf States. Compl. ¶ 10. It includes the islands of Diego Garcia, Peros Banhos, Salomon, and numerous other small islands. *Id.* ¶ 8. Ceded to the United Kingdom by the French in 1814, Chagos became part of the British colony of Mauritius, and continues under British administration today. *Id.* ¶¶ 9–10, 18. Its population, which numbered more than 550 in 1861, had grown to approximately 1,000 inhabitants by the 1960s. *Id.* ¶¶ 8, 10. During that period, the Chagossians established communities by working at the local copra (coconut product) plantations, cultivating vegetables, raising animals, attending church, and educating their children, and otherwise engaging in community life. *Id.* ¶ 11.

In 1964, the British and United States governments entered into negotiations to establish a U.S. military facility in the Indian Ocean. *Id.* ¶ 17. One year later, the British detached Chagos from Mauritius and incorporated the archipelago in a newly created British Indian Ocean Territory ("BIOT"). *Id.* ¶ 9. Subsequently, the Chagos population was removed to Mauritius and Seychelles. *Id.* ¶¶ 21–23. Diego Garcia, the largest of the Chagos islands, then became home to the proposed U.S. military facility. *Id.* ¶ 25.

The plaintiffs in this action are three individuals and two organizations. Plaintiff Bancoult is a native Chagossian who

---

1. The complaint also names as additional defendants various current and former officials of the Departments of State and Defense ("the individual federal defendants") and Halliburton Corporation ("Halliburton"). Neither the individual federal defendants nor Halliburton are named in the plaintiffs' preliminary injunction, or are party to the motions to dismiss that are discussed herein.

2. For purposes of the pending motions, the court takes the plaintiffs' factual allegations as true. *E.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Crane v. New York Zoological Soc.,* 894 F.2d 454, 456 (D.C.Cir. 1990); *C.P. Chemical Co., Inc. v. Stevenson,* 732 F.Supp. 119, 120 (D.D.C.1989). The court need not, however, accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations. *E.g., Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990).

alleges that in 1967, his family was prevented from returning home to Peros Banhos after a medical visit to Mauritius. *Id.* at 31. Plaintiff Bancoult alleges that he and his family suffered abject poverty in Mauritius and that he has been rejected repeatedly for employment on Diego Garcia. *Id.* Plaintiff Mein is a native Chagossian who reports that in 1971 and 1972, persons acting on behalf of the U.S. and British governments forced her family to board a vessel from Diego Garcia to Peros Banhos and, later, to Seychelles. *Id.* at 32. She alleges that the harsh conditions of passage caused her to miscarriage. *Id.* Plaintiff France–Charlot was born in Mauritius and is a first-generation descendant of Chagossians native to Salomon Island. *Id.* ¶ 33. She alleges that as a result of the poverty her family suffered in Mauritius, she suffered social, cultural, and economic oppression. *Id.* Plaintiffs Chagos Refugee Group and Chagos Social Committee are organizations whose principal interest is the betterment of the Chagossian community in, respectively, Mauritius/Agalega and Seychelles. *Id.* ¶¶ 34–35.

The plaintiffs characterize the events leading up to the establishment of the U.S. facility on Diego Garcia as fraught with secret agreements, manipulation, and concealment on the part of the U.S. and British governments. *E.g., id.* ¶¶ 17–18, 20. The plaintiffs allege that the United States and/or its agents physically removed them from Chagos between 1965 and 1971 by the United States and/or its agents and that their exile continues today through the defendants' employment discrimination. *Id.* ¶¶ 21–23, 26, 61, 74, 76.

**B. Procedural History**

On December 20, 2001, the plaintiffs filed a complaint against the United States, DCDM, and two other defendants alleging forced relocation, torture, racial discrimination, cruel, inhuman, and degrading treatment, genocide, intentional infliction of emotional distress, negligence, and trespass. *Id.* ¶¶ 59–101. The plaintiffs request relief in the form of compensatory damages, punitive damages, and injunctive and declaratory relief. *Id.* at 37–38.

On March 21, 2002, defendant United States filed its motion to dismiss the complaint. The United States argues that this court lacks subject-matter jurisdiction because of the doctrines of sovereign immunity and political question, and for lack of standing. Def. U.S.' Mot. to Dismiss at 1–2.

On March 27, 2002, defendant DCDM also filed a motion to dismiss the complaint. DCDM contends that the plaintiffs failed to effectively serve DCDM with a summons or to allege a statutory or constitutional basis for personal jurisdiction against DCDM. Def. DCDM's Mot. to Dismiss at 5, 23–24. On April 12, 2002, the plaintiffs responded with a motion for leave to conduct immediate discovery and for an enlargement of time to respond to DCDM's motion to dismiss. Pls.' Mot. for Leave to Conduct Immediate Disc. ("Pls.' Mot. for Leave"). In addition, on August 1, 2002, the plaintiffs moved for an antisuit injunction and sanctions against DCDM. Pls.' Mot. for an Antisuit Injunction and Sanctions.

On February 14, 2002, the plaintiffs moved for a preliminary injunction to bar defendants United States and DCDM from engaging in allegedly discriminatory policies and practices that deny the plaintiffs access to Chagos and to employment on Diego Garcia. Pls.' Mot. for Prelim. Inj. at 1.

**III. ANALYSIS**

**A. The Court Orders Further Briefing by the Parties on Subject–Matter Jurisdiction**

As noted, defendant United States brings a motion to dismiss the com-

plaint on several grounds. At the outset, the court must assure itself that subject-matter jurisdiction exists over this action. *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Cobell v. Norton*, 240 F.3d 1081, 1094 (D.C.Cir.2001). When a plaintiff brings an action against the United States, establishing subject-matter jurisdiction requires an additional step, as the United States cannot be sued absent an explicit statutory waiver of sovereign immunity.[3] *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citations omitted); *Galvan v. Fed. Prison Indus., Inc.*, 199 F.3d 461, 463–64 (D.C.Cir.1999).

■ In this case, neither the complaint nor the plaintiffs' subsequent submissions provide sufficient clarity about the pending claims to allow this court to determine whether subject-matter jurisdiction exists. The plaintiffs assert claims of forced relocation, torture, racial discrimination, cruel, inhuman, and degrading treatment, and genocide. Compl. ¶¶ 59–87. But the plaintiffs do not always identify the specific legal basis for each claim. *Id.* Nor do they indicate the specific relief sought pursuant to each claim. *Id.* at 38–39. Because waivers of federal sovereign immunity turn on the basis of the claim and the type of relief sought,[4] the court cannot make an initial[5] jurisdictional determination until the plaintiffs provide clarification on jurisdictional issues.

■ Courts often provide the parties an opportunity to submit supplemental memoranda on the question of subject-matter jurisdiction. *Saadeh v. Farouki*, 107 F.3d 52, 53 (D.C.Cir.1997); *First Va. Bank v. Randolph*, 110 F.3d 75, 77 (D.C.Cir.1997). In keeping with this tradition, the court directs the plaintiffs to submit a supplemental memorandum that answer the following questions, with citation to supporting legal authority:

1. What is the specific statutory, common law, or international law (treaty or customary international law) basis for each claim against the United States, and have the plaintiffs met all jurisdictional conditions associated therewith? For example, if the plaintiffs are asserting a claim based on an international convention, does that convention

---

3. The plaintiffs invite the court to imply a waiver of sovereign immunity whenever (1) *peremptory norms of international law* are violated, (2) principles of comity among nations demands it, and (3) equity requires it. Compl. ¶ 6; Pls.' Opp'n to Def. U.S.' Mot. to Dismiss at 3–5. But "[i]f any principle is central to our understanding of sovereign immunity, it is that the power to consent to such suits is reserved to Congress." *United States v. Dalm*, 494 U.S. 596, 609, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). For that reason, "waivers ... will not be implied." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). The court therefore declines the plaintiffs' invitation.

4. For example, the Tucker Act waives sovereign immunity for monetary damage suits against the United States where the suit is premised on a "money-mandating constitutional provision, statute, or regulation that has been violated, or an express or implied contract with the United States." 28 U.S.C. § 1491; 16 MOORE'S FEDERAL PRACTICE § 105.25 (3d ed.2002). The Federal Tort Claims Act provides a limited waiver of sovereign immunity for certain tort claims against the United States. 28 U.S.C. § 1346(b). The Administrative Procedure Act waives sovereign immunity for suits seeking relief "other than money damages" for certain agency actions. 5 U.S.C. § 702.

5. The court notes that even if it were to make an initial determination of jurisdiction, jurisdiction may still be barred if the controversy involves a political question or if the plaintiffs lack standing to bring their claims.

or its implementing legislation confer an individual right of action so as to satisfy the "arising under" requirement of federal question jurisdiction?

2. What type of relief do the plaintiffs seek pursuant to each claim? For example, are the plaintiffs seeking compensatory or punitive damages against the United States for any of their five claims? If so, in what amount?

3. How does each claim's legal basis and type of relief sought affect the availability of a sovereign-immunity waiver? For example, can a claim for injunctive relief against the United States that is premised on customary international law qualify for a waiver of sovereign immunity under the Administrative Procedure Act?

The court will defer ruling on defendant United States' motion to dismiss until after the plaintiffs submit their supplemental memorandum, defendant United States submits a response, and the plaintiffs submit a reply (if any). At that point, the court will consider all issues, including political question and lack of standing, related to subject-matter jurisdiction.[6]

### B. The Court Grants Defendant DCDM's Motion to Dismiss for Ineffective Service of Process

#### 1. Legal Standards for Service of Process and Treating a Motion to Dismiss as Conceded

■ Federal Rule of Civil Procedure 4(h) provides that process of service upon a foreign corporation may be effected within the United States or abroad. FED. R.CIV.P. 4(h). For process within the United States, a plaintiff must deliver a copy of the summons and the complaint to "an officer, a managing or general agent,

or ... any other agent authorized by appointment or by law to receive service of process." FED.R.CIV.P. 4(h)(1). Process outside the United States "may be made in any manner prescribed" by Federal Rule of Civil Procedure 4(f). FED.R.CIV.P. 4(h)(2), (f). Among the approved methods of service described by Rule 4(f) is personal delivery of a copy of the summons and the complaint. FED.R.CIV.P. (4)(f)(2)(C)(i).

■ If service is not properly effected upon a foreign corporation, it may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(4) and (5). FED. R.CIV.P. 12(b)(4), (5). Under Local Civil Rule 7.1(b), an opposing party must file a responsive memorandum of points and authorities in opposition to a Rule 12 motion within 11 days of the filing of the motion. LCvR 7.1(b). If the opposing party fails to do so, the court may treat the motion as conceded. *Giraldo v. Dep't of Justice,* 2002 WL 1461787, at *1 (D.C.Cir. July 8, 2002) (citing *Fed. Deposit Ins. Corp. v. Bender,* 127 F.3d 58, 68 (D.C.Cir.1997)). Moreover, if the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case. *Sparrow v. United Air Lines, Inc.,* 1999 U.S. Dist. LEXIS 22054, at *17 (D.D.C. July 23, 1999), *overruled on other grounds,* 216 F.3d 1111 (D.C.Cir.2000); *Hanson v. Greenspan,* 1991 WL 274267, at *3 (D.D.C. Dec. 6, 1991).

#### 2. The Court Treats DCDM's Motion to Dismiss As Conceded and Strikes the Plaintiffs' Motion for an Anti-suit Injunction and Sanctions Against DCDM

■ In this case, defendant DCDM moves to dismiss the plaintiffs' complaint

---

6. The court has set forth the requirements for the supplemental memorandum, response, and reply in the order issued contemporaneously with this memorandum opinion.

pursuant to Rule 12(b)(4) and (5) for insufficiency of process and service of process.[7] Def. DCDM's Mot. to Dismiss at 20. According to DCDM, the plaintiffs' attempted service on defendant DCDM in the District of Columbia was ineffective because DCDM has no "office, officer, managing agent, general agent or other agent authorized to receive process" within the District. *Id.* (citing Pougnet Aff. ¶¶ 8, 24, 26, 27). Likewise, defendant DCDM argues that the plaintiffs' efforts to serve DCDM in Mauritius were ineffective because the plaintiffs failed to deliver to a DCDM agent a copy of the summons along with the complaint. *Id.* (citing Pougnet Aff. ¶ 11, Ex. A).

In response to DCDM's motion to dismiss, the plaintiffs filed a motion for leave to conduct discovery and for enlargement of time to respond to the motion to dismiss. Pls.' Mot. for Leave. The plaintiffs' motion for leave, however, does not satisfy the requirements of Local Civil Rule 7.1(b), which requires that the opposing party file a memorandum of points and authorities in opposition to the motion. LCvR 7.1(b). Even if the court were to treat the plaintiffs' motion for leave as a memorandum in opposition to DCDM's motion, the plaintiffs still fail to present any argument countering DCDM's assertion of ineffective service of process. Pls.' Mot. for Leave.

Given the plaintiffs' failure to file a memorandum in opposition to DCDM's motion, the court treats defendant DCDM's motion to dismiss as conceded, and thereby grants the motion to dismiss

for insufficiency of process and service of process.[8] *Giraldo,* 2002 WL 1461787, at *1. Because defendant DCDM is not properly before the court, the court strikes the plaintiffs' motion for an antisuit injunction and sanctions against defendant DCDM.

## C. The Court Denies the Plaintiffs' Motion for a Preliminary Injunction Because the Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits

### 1. Legal Standard for Preliminary Injunctive Relief

This court may issue a preliminary injunction only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)); *see also World Duty Free Americas, Inc. v. Summers,* 94 F.Supp.2d 61, 64 (D.D.C.2000). It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administra-

---

7. In its motion to dismiss, DCDM also alleges lack of personal jurisdiction under Rule 12(b)(2). Def. DCDM's Mot. to Dismiss at 1. Although its arguments are persuasive, the court cannot reach that issue prior to determining whether the plaintiffs properly effected service.

8. The court notes that this result is not at odds with the evidence supplied by the plaintiffs' own process server, whose notice of service conspicuously fails to list the required summons. Def. DCDM's Mot. to Dismiss Ex. A (listing all pleadings served on DCDM on February 18, 2002).

tion and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F.Supp.2d 114, 140 (D.D.C.1999) (internal quotation omitted).

█ Because preliminary injunctions are extraordinary forms of judicial relief, courts should grant them sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. *Ambach v. Bell*, 686 F.2d 974, 979 (D.C.Cir.1982).

█ Furthermore, a party who seeks a mandatory injunction to change (rather than preserve) the status quo "must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *Veitch v. Danzig*, 135 F.Supp.2d 32, 35 (D.D.C.2001).

## 2. The Court Concludes the Plaintiffs Have Not Demonstrated a Substantial Likelihood of Success on the Merits

█ In presenting their motion to the court, the plaintiffs state that they "satisfy all four factors and a preliminary injunction is the necessary and appropriate relief to remedy the irreparable injuries Plaintiffs will suffer." Pls.' Mot. for Prelim. Inj. at 6. Given the importance of the "substantial likelihood of success" factor, the court considers it first. *Am. Bankers*

*Ass'n*, 38 F.Supp.2d at 140. Because the plaintiffs fail to demonstrate a substantial likelihood of success on the merits, the court declines to grant the extraordinary relief they request. *Id.*

The plaintiffs argue that they are likely to succeed on the merits of the underlying action because the two defendants "continue the forced relocation of the Chagossians on Mauritius and Seychelles by denying them access to Chagos," and "forced relocation of individuals is well established as a violation of customary international law." Pls.' Mot. for Prelim. Inj. at 10. The plaintiffs also claim success because "[d]efendants' exclusionary actions are motivated by discrimination based on the race, descent, ethnicity, and national origin of Plaintiffs," and discrimination is "prohibit[ed] in international and U.S. law." *Id.*

In response, defendant United States raises subject-matter jurisdiction concerns. First, the United States notes that without a clear waiver of sovereign immunity, this court lacks subject-matter jurisdiction to issue the injunctive relief sought by the plaintiffs. Def. U.S.' Opp'n at 10. The United States also contends that because it does not have the power to grant or deny access to Chagos, the plaintiffs cannot satisfy the causation and redressability elements of standing, and thus lack standing to request an injunction. *Id.* Third, the United States argues that the actions underlying the plaintiffs' request for relief constitute a non-justiciable political question and cannot be considered by this court. *Id.* at 16. As for the merits, the United States argues that the very same considerations prevent the plaintiffs from demonstrating a substantial likelihood of success on the merits.[9] *Id.* at 15–16.

---

9. The United States argues that because "plaintiffs seek to radically alter the status quo by ordering that plaintiffs immediately be returned to the Archipelago," the relief they seek qualifies as a mandatory injunction, which requires a higher standard than the

The court concludes that the plaintiffs have failed to demonstrate a substantial likelihood of success on the merits. *Mova Pharm. Corp.*, 140 F.3d at 1066. As noted in Part III.A. of this opinion, the jurisdiction of this court over the complaint underlying the preliminary injunction motion remains in doubt. Even if the plaintiffs were able to conclusively establish jurisdiction, it is far from clear that the plaintiffs' suit would succeed on the merits. Here the plaintiffs allege forced relocation, torture, racial discrimination, cruel, inhuman, and degrading treatment, and genocide [10] against the United States.[11] Compl. ¶¶ 59–101. Each claim appears to be premised at least in part on customary international law or international conventions to which the United States is a party. *Id.* To succeed on the merits, therefore, the plaintiffs must prove that actions taken by defendant United States violate these sources of international law. *Tel–Oren v. Libyan Arab Republic*, 726 F.2d 774, 795 (D.C.Cir.1984) (Edwards, J., concurring) (determining whether terrorism is a violation of the law of nations).

Difficult as that task is, it is complicated by the fact that the parties hotly dispute certain basic points. For example, the parties are engaged in a running battle over whether or not the United States controls access to Chagos, a point that goes to several of the claims (e.g., continued forced relocation, racial discrimination, and cruel, inhuman, and degrading treatment). *Compare* Pls.' Opp'n to Def. U.S.' Mot. to Dismiss ("Pls.' Opp'n") at 1 (stating that "[the defendant has] control of access to the Chagos Archipelago") *with* Def. U.S.' Mot. to Dismiss at 30 (stating that "it is Britain, not the United States, that controls both physical and legal access to the Archipelago").

Given the jurisdictional and substantive challenges associated with the plaintiffs' action, the court concludes that the plaintiffs do not enjoy a substantial likelihood of success on the merits of their claims. *Mova Pharm. Corp.*, 140 F.3d at 1066. Furthermore, because a preliminary injunction may issue only upon a showing of all four injunction factors, the court's analysis ends here, without consideration of the other three factors. *Howard v. Evans*, 193 F.Supp.2d 221, 228 (D.D.C.2002) (citing *Mova Pharm. Corp.*, 140 F.3d at 1066; *CityFed Fin. Corp.*, 58 F.3d at 746; and *World Duty Free Americas, Inc.*, 94 F.Supp.2d at 64). Accordingly, the court denies the plaintiffs' motion for a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the court orders further briefing on defendant United States' motion to dismiss, grants defendant DCDM's motion to dismiss, strikes the plaintiffs' motion for an antisuit injunction and sanctions against defendant DCDM, and denies the plaintiffs' motion for a preliminary injunction. An order directing

---

usual four-factor injunctive relief test. Def. U.S.' Opp'n at 14. The plaintiffs counter that because they seek to prevent the United States' "present and continuing affirmative acts," the relief they seek is merely a "prohibitory" injunction subject to the usual four-factor test. Pls.' Reply at 3–4. Because the court determines that the plaintiffs fail to qualify for injunctive relief under the usual, lower standard, there is no need to consider whether the higher standard should apply.

**10.** For reasons that are unclear, the plaintiffs discuss only two of these claims—forced relocation and discrimination—in their motion for a preliminary injunction. Pls.' Mot. for Prelim. Inj. at 10–25.

**11.** Because defendant DCDM is not before the court, the court does not discuss the four claims raised by the plaintiffs against DCDM. *Supra* Part III.B.

the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this—day of September, 2002.

## ORDER

Ordering Further Briefing on Defendant United States' Motion to Dismiss; Granting Defendant DCDM's Motion to Dismiss; Denying the Plaintiffs' Motion for a Preliminary Injunction; and Striking the Plaintiffs' Motion for an Antisuit Injunction and Sanctions Against Defendant DCDM

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this—day of September, 2002, it is

**ORDERED** that the plaintiffs shall submit by October 28, 2002, a supplemental memorandum answering the questions listed in the memorandum opinion issued contemporaneously with this order; that defendant United States shall submit its response by November 18, 2002; and that the plaintiffs shall submit a reply (if any) by December 2, 2002. All briefs shall cite (including pincite) to supporting legal authority, and shall not exceed fifteen double-spaced pages; and it is

**FURTHER ORDERED** that defendant DCDM's motion to dismiss is **GRANTED** and the claims against DCDM are **DISMISSED without prejudice**; and it is

**FURTHER ORDERED** that the plaintiffs' motion for a preliminary injunction is **DENIED**; and it is

**FURTHER ORDERED** that the plaintiffs' motion for an antisuit injunction and sanctions against defendant DCDM is **STRICKEN**.

**SO ORDERED**.