**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, et al., Plaintiffs,**

v.

**NATIONAL MEDIATION BOARD, et al., Defendants.**

No. CIV.A. 02–0034(JR).

United States District Court, District of Columbia.

Jan. 14, 2002.

Robert Alexander, Bredhoff & Kaiser, P.L.L.C., Washington, DC, Leon Dayan, Jeffrey R. Freund, Bredhoff & Kaiser, P.L.L.C., Washington, DC, for plaintiffs.

Neal D. Mollen, Paul, Hastings, Janofsky & Walker LLP, Washington, DC, Jonathan Brian New, U.S. Department of Justice, Washington, DC, for defendants.

### MEMORANDUM

ROBERTSON, District Judge.

This memorandum sets forth the reasons for this Court's order, announced in open court on January 11, 2001, and issued the same day, denying plaintiffs' motion for preliminary injunction.[1]

### *Background*

On December 20, 2001, by Executive Order 13248 issued pursuant to the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, the President established a Presidential Emergency Board to investigate a labor dispute between the International Association of Machinists and Aerospace Workers (IAMAW) and United Airlines. The establishment of the Presidential Emergency Board operated to extend, until at least February 20, 2002, a thirty-day cooling off period that began on November 21, 2001, when contract negotiations between IAMAW and United failed and the National Mediation Board released the parties from mediation. IAMAW, whose members had voted to strike United before the President's action, sued on January 7, 2002, for a declaration that Executive Order 13248 is invalid and that the National Mediation Board acted unlawfully when it recommended the creation of the Presidential Emergency Board. The preliminary injunction IAMAW sought would have effectively cleared the way for a strike against United by forbidding United or the NMB from invoking the Executive Order or the existence of the Presidential Emergency Board to stop it.

The Executive Order and the NMB recommendation were both issued pursuant to § 10 of the Railway Labor Act, 45 U.S.C.

---

1. The written motion of record is actually an application for temporary restraining order. Normal procedures were telescoped in this case in order to expedite the issuance of an order that would be appealable. Thus, by order issued January 8, the TRO was denied, but the application was deemed also to be a motion for preliminary injunction, which was set for hearing on January 11, 2001.

§ 160. The RLA requires the NMB to recommend the creation of a Presidential Emergency Board if it finds, as it did find in this case, that an unresolved labor dispute "threaten[s] substantially to interrupt interstate commerce to a degree such as to deprive any section of the country of essential transportation service." 45 U.S.C. § 160. The President has the discretion to accept or reject the NMB's recommendation.

IAMAW's suit asserts that the NMB acted without making reasoned factual findings, without analyzing the excess capacity of other air carriers to handle United's traffic during a strike, and simply to "avoid[ ] any possibility of a work stoppage during the holidays" (quoting NMB's press release of November 19, 2001). In IAMAW's submission, NMB's action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and therefore unlawful.

## Analysis

■ Only the first of the familiar four preliminary injunction factors—likelihood of success on the merits—had any bearing on the decision to deny the IAMAW's motion in this case. The other three were considered, but none weighed heavily in either side's favor, and no party emphasized them in its arguments. United would be harmed if the preliminary injunction had been granted, and IAMAW is injured by its denial, but the harms seem to be evenly balanced. In a labor dispute like this one, the courts have no special competence to say where the public policy lies. It was thus unnecessary to perform the "sliding scale" analysis discussed in *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C.Cir.1998). The first factor is always particularly important anyway,

because a preliminary injunction will not be granted unless a claimant can demonstrate " 'a fair ground for litigation.' " *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C.Cir.2001) (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir. 1977)). In this case, the first factor was dispositive: Plaintiffs failed to demonstrate that they have a substantial likelihood of success on the merits, and their motion was accordingly denied.

## *Reviewability*

■ The scope of judicial review of NMB decisions under the Railway Labor Act is "one of the narrowest known to the law." *International Ass'n of Machinists & Aerospace Workers v. TWA*, 839 F.2d 809, 811 (D.C.Cir.), *amended*, 848 F.2d 232 (D.C.Cir.1988). The decided cases, beginning with *Switchmen's Union of N. Am. v. National Mediation Bd.*, 320 U.S. 297, 302, 64 S.Ct. 95, 88 L.Ed. 61 (1943), have emphasized the limitations on judicial intervention so strongly that—at least where the NMB is doing its regular work of certifying employee representatives and facilitating the dispute resolution process—it is clear that a district court may take only a "peek at the merits" to determine whether it has subject matter jurisdiction, *Professional Cabin Crew Ass'n v. National Mediation Bd.*, 872 F.2d 456, 459 (D.C.Cir.1989), and should decline to review an action of the NMB unless it involves "patent official bad faith," a gross violation of the Act, or an infringement upon the constitutional rights of the parties. *Local 808 v. National Mediation Bd.*, 888 F.2d 1428, 1430 (D.C.Cir.1989); *International B'hood of Teamsters v. Brotherhood of Railway, Airline, & Steamship Clerks*, 402 F.2d 196, 205 (D.C.Cir.1968). In this case, a "peek at

the merits" reveals none of the above.[2]

IAMAW's primary argument is that the decided cases do not control here because the NMB's act of issuing a § 10 recommendation is different from its regular work of certifying employee representatives and facilitating the dispute resolution process. That argument finds no support in case law—no case has involved a § 10 recommendation—and in my view has little or no chance of success.

No "bright line" separates a § 10 recommendation from the NMB's other dispute resolution functions of directly mediating between disputing parties and overseeing arbitration. Indeed, it seems likely that the NMB's decision to recommend the establishment of a Presidential Emergency Board was made in the continuing and conscious exercise of that function. The reasoning behind the NMB's decision to recommend an emergency board is no more subject to judicial review than the reasoning behind its decision—or its refusal to decide—that a mediation has been unsuccessful. The cases make it clear that in the latter case, because the NMB's power to prolong negotiations can be used to exert pressure on the parties to settle, a court should exercise the "utmost restraint before ... terminat[ing] a process that has not been terminated by a public agency." *International Ass'n of Machinists & Aerospace Workers v. National Mediation Bd. (Machinists I)*, 425 F.2d 527, 537 (D.C.Cir. 1970); *see also Local 808 v. National Mediation Bd.*, 888 F.2d 1428, 1433–34 (D.C.Cir.1989) ("[C]ourts have no business interfering in major disputes under the RLA. ... [']The effectiveness of these private dispute resolution procedures depends on the ... assurance that neither party will be able to enlist the courts to further its own partisan ends.' ") (quoting *TWA v. Independent Fed'n of Flight Attendants*, 489 U.S. 426, 441, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989) (emphasis removed)).

This Court thus would have had no warrant to review a decision by NMB to make one more mediation attempt through the holiday season, or (more tellingly) even to question an NMB demand that the parties agree to a Presidential Emergency Board as a condition of their release from mediation. *International Ass'n of Machinists & Aerospace Workers v. National Mediation Bd. (Machinists II)*, 930 F.2d 45, 48 (D.C.Cir.1991). Neither of those things happened in this case, but it will be remembered that the NMB announced its intention to recommend an emergency board on November 19, 2001, the day that it announced that the parties would be released from mediation effective November 21, 2001. It is possible that the NMB calculated that the threat of a Presidential Emergency Board might bring about a settlement during the cooling off period. Or perhaps the NMB had "black box" information from which it inferred that a Presidential Emergency Board would be just the right briar patch to throw the parties into. *Local 808*, 888 F.2d at 1435. The Court does not know, and, under the scheme created by the Railway Labor Act, does not have a need to know. *Cf. Machinists II*, 930 F.2d at 48 (court lacked authority to question the NMB's use of any "device that can fairly be said to be

**2.** A charge of patent official bad faith or gross statutory violation is difficult to advance in view of the presumption of validity, equivalent to that of legislative findings, that NMB actions enjoy. "[I]f any state of facts might be supposed that would support its action, those facts must be presumed to exist," *Inter-national Ass'n of Machinists & Aerospace Workers v. National Mediation Bd. (Machinists I)*, 425 F.2d 527, 540 (D.C.Cir.1970). If there is a "reasonable probability of conditions and circumstances ... sufficient to justify the Board's judgment," courts have no jurisdiction to review the decision. *Id.* at 541.

designed to settle a dispute without a strike and does not independently offend other laws").

### Final agency action

A second threshold question presented by the parties is whether the decision was "final agency action." 5 U.S.C. § 704. The defendants answer in the negative, relying upon *Dalton v. Specter*, 511 U.S. 462, 469–70, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994), in which the Supreme Court found no final agency action in a commission's recommendation that certain military bases be closed. The act that directly affected the plaintiffs, the Court reasoned in that case, was the discretionary (and unreviewable) decision of the President to approve or reject the base closure proposal.

IAMAW's more complex argument is that the issue is governed instead by *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997), in which a biological opinion of the Fish and Wildlife Service was held to be final agency action even though final implementation decisions regarding endangered species were the responsibility of the Bureau of Reclamation. The argument is that the NMB's recommendation had "direct and appreciable legal consequences," just as the Fish and Wildlife Service's biological opinion did in *Bennett*. IAMAW points out that the President's only authority to impose an additional cooling off period for a labor dispute involving an airline is § 10 of the RLA, and that the President may not appoint an emergency board under the statute unless the NMB first finds that a dispute substantially threatens to interrupt interstate commerce. From this premise, the union reasons that an NMB decision *against* recommending an emergency board must be final agency action (the "consummation" of the agency's decision-making process, *Bennett*, 520 U.S. at 177–

78, 117 S.Ct. 1154), since the President has no authority to appoint an emergency board in the face of such a decision, and urges that it makes no sense to decide that an NMB recommendation *for* an emergency board is not final agency action as well.

The hole in the union's argument is that, when the NMB decides not to recommend an emergency board, all it does is to declare the mediation unsuccessful and release the parties to engage in self-help. That decision may be final agency action, but, absent patent official bad faith or a gross statutory violation, it is unreviewable. I need not, however, and I do not decide whether the NMB's action in this case was final agency action, because I have concluded that plaintiff has little or no chance of success on the judicial review issue.