**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff,**

v.

**NATIONAL MEDIATION BOARD et al., Defendants.**

**Civil Action No. 05–0796 (RMU).**

United States District Court, District of Columbia.

June 20, 2005.

Michael Stephen Wolly, Zwerding, Paul, Leibig, Kahn & Wolly, P.C., Washington, DC, for Plaintiff.

Peter T. Wechsler, United States Department Of Justice Civil Division, Federal Programs Branch, Washington, DC, for Defendants.

*MEMORANDUM OPINION*

URBINA, District Judge.

DENYING THE PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION

## I. INTRODUCTION

■ This case comes before the court on the plaintiff's motion for a preliminary injunction.[1] The plaintiff, the International Association of Machinists and Aerospace Workers ("IAM"), is a labor organization representing employees in the railroad industry. One of the defendants, the National Mediation Board ("NMB" or "Board"), is the federal agency currently mediating a labor dispute between IAM and the rail carriers represented by the National Carriers Conference Committee ("NCCC") pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* Defendants Edward J. Fitzmaurice, Jr. and Read Van de Water are members of the NMB board, and defendant Harry R. Hoglander is Chairman of the NMB. The plaintiff seeks an injunction to compel the defendants to terminate mediation and proffer arbitration in the labor dispute. The court denies the plaintiff's motion for a preliminary injunction because the plaintiff fails to demonstrate that it is likely to succeed on the merits, that it will suffer irreparable harm, or that a preliminary injunction furthers the public interest.

## II. BACKGROUND

In late 1999, IAM (the collective bargaining representative for nearly 8,000 rail

---

1. The court treats the plaintiff's motion for a preliminary and permanent injunction as a motion for a preliminary injunction because a permanent injunction is only appropriate after a trial on the merits. *See West Virginia Association of Community Health Centers, Inc. v. Heckler,* 734 F.2d 1570, 1578 (D.C.Cir. 1984) (explaining that there are procedural differences between a preliminary and a permanent injunction because the purpose of a preliminary injunction is to preserve the parties' positions prior to trial); *see also* 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 65.04 (3d ed.2004), and *Amoco Prod. Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (explaining that the standard for a preliminary injunction and a permanent injunction is the same, but that plaintiff must show actual success on the merits for a permanent injunction).

carrier employees) and the rail carriers represented by NCCC exchanged notices proposing changes to collective bargaining agreements.[2] Compl. ¶ 8. From January 2000 to February 2001, IAM and the NCCC met for bargaining at least twelve times, but the parties were unable to reach an agreement on issues concerning wages and the size of the retroactive employee contribution to health and welfare. *Id.* ¶¶ 9, 12–13. The NCCC invoked the NMB's mediation services in February 2001.[3] *Id.*, Ex. D. IAM and the carriers have been involved in the NMB mediation process since that time. *Id.* ¶ 11.

Between February 2001 and January 2005, IAM and the NCCC attended thirteen NMB mediation sessions. *Id.* ¶¶ 12, 15. Representatives of the parties have also met privately with the NMB on a few occasions. Defs' Opp'n to Pl.'s Mot. for Prelim. and Permanent Inj. Relief, Gibbons Decl. ¶ 33 ("Gibbons Decl."); Compl., Ex. G. In April 2002, IAM made a request that the NMB end mediation and proffer arbitration. Gibbons Decl. ¶ 29. A "proffer of arbitration" is an industry term describing the Railway Labor Act requirement that the NMB endeavor parties to submit their dispute to arbitration once its mediation efforts have failed. Pl.'s Mot. for Prelim. and Permanent Injunctive Relief, Reynolds Decl. ¶ 5 ("Reynolds Decl."). *See also* 45 U.S.C. § 155. IAM has requested that the NMB end mediation and proffer arbitration numerous times since the April 2002 request, including two additional times in 2002, four times in 2003, three times in 2004, and one time in 2005. Gibbons Decl. ¶ 29; Compl. ¶¶ 19–25, 27.

Despite IAM's requests for a proffer, the NMB has not yet issued a proffer recommendation. In April 2004, NMB staff made a recommendation on the proffer request to the three NMB board members, defendants Hoglander, Fitzmaurice, and Van de Water. Pl.'s Reply Mem. in Supp. of Pl.'s Mot. for Prelim. and Permanent Injunctive Relief ("Pl.'s Reply") at 9. On April 20, 2004, Hoglander voted in favor of the proffer, and on May 4, 2004, Van de Water voted against the proffer. Reynolds Decl. ¶ 28. Board member Fitzmaurice did not vote on the proffer request. *Id.* Two Board members must vote in favor of the proffer request before the NMB may terminate the mediation process. Gibbons Decl. ¶ 33. To this day, Fitzmaurice has not voted on the proffer request. Pl.'s Reply at 9. Additionally, in mid–2004, Hoglander advised IAM that the NMB has been unable to issue a proffer recommendation because the other two Board members believe that the parties are still in negotiations. *See* Pl.'s Reply, Roach Decl. Ex. A. The plaintiff characterizes the NMB's refusal to proffer arbitration as akin to "imprisoning the union until it confesses that the Board knows better." Pl.'s Reply at 9.

The parties' relationship is further complicated by a September 2004 e-mail exchange. Specifically, on September 15, 2004, a Union Pacific Railroad employee, James C. Miller, sent an e-mail to the NMB stating that he worked for the Union Pacific Railroad and that he belonged to a machinists' union in North Platte, Nebraska. Compl., Ex. K. Miller wrote, "5 years without a contract seems long enough, by Law should'ent [sic] this be resolved, is

---

**2.** The notices were served pursuant to the Railway Labor Act § 6, which requires carriers and unions to give written notice of an intended change in agreements affecting rates of pay, rules or working conditions. 45 U.S.C. § 156.

**3.** When parties are unable to solve their differences through direct negotiations, either or both of the parties may invoke the National Mediation Board's ("NMB") mediation services. 45 U.S.C. § 155.

this not why the NMB was formed?" *Id.* Daniel Rainey, the head of the NMB's Office of Alternative Dispute Resolution Services, advised Miller that the NMB did not have an application for mediation between the Union Pacific Railroad and IAM. *Id.*, Ex. L. As a result, Rainey directed Miller to "consult with [his] union representative regarding this matter." *Id.* Rainey's letter adds that Miller may wish to consult the union's procedures or a private attorney if he felt that his union was not representing his interests. *Id.*

On April 20, 2005, the plaintiff filed a complaint for declaratory and injunctive relief along with a motion for a preliminary injunction. As of the date the complaint was filed, the dispute has been on the NMB's mediation docket for about four years. The court now turns to the preliminary injunction motion.

### III. ANALYSIS

#### A. Legal Standard for Injunctive Relief

■ This court may issue interim injunctive relief only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)); *see also World Duty Free Americas, Inc. v. Summers,* 94 F.Supp.2d 61, 64 (D.D.C.2000). It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (per curiam). Indeed, absent a "substantial indication" of

likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.,* 38 F.Supp.2d 114, 140 (D.D.C.1999) (internal quotation omitted).

■ The four factors should be balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *CSX Transp., Inc. v. Williams,* 406 F.3d 667 (D.C.Cir.2005) (citing *City-Fed Fin. Corp.,* 58 F.3d at 747). "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.,* 58 F.3d at 747.

■ Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.,* 58 F.3d at 747 (quotation omitted). Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *Id.*

■ Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must

be carefully circumscribed and tailored to remedy the harm shown. *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C.Cir.1990) (citation omitted).

### B. The Court Denies the Plaintiff's Motion for a Preliminary Injunction

Because the plaintiff has not made the requisite showing on three parts of the preliminary injunction test, substantial likelihood of success on the merits, irreparable harm, and public interest, the court denies the plaintiff's motion. The preliminary injunction factors are discussed individually below.

#### 1. The Plaintiff Fails to Show a Substantial Likelihood of Success on the Merits

■ The plaintiff claims that the defendant violated section 5 of the Railway Labor Act, 45 U.S.C. § 155, by refusing to proffer arbitration after mediation proved unsuccessful. Compl. at 2. The plaintiff asks the court to order the defendant to terminate mediation and proffer arbitration. *Id.* at 11. A court's authority to review the NMB's decision to keep a dispute in mediation is limited to those extraordinary and exceptional situations in which the NMB's actions constitute patent official bad faith.[4] *Local 808, Bldg., Maint., Serv. and R.R. Workers v. Nat'l Mediation Bd.*, 888 F.2d 1428, 1434 (D.C.Cir.1989) (*"Local 808"*) (citing *Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Nat'l Mediation Bd.*, 425 F.2d 527, 537, 543 (D.C.Cir.1970) (*"IAM 1"*)).

■ The plaintiff argues that it is likely to succeed on the claim that the defendants have violated the Railway Labor Act

because the defendants' actions during the mediation constitute patent official bad faith. Pl.'s Mot. for Prelim. and Permanent Injunctive Relief ("Pl.'s Mot.") at 13. Specifically, the plaintiff has identified the following three factors in support of its request for injunctive relief: (1) the length of time that has elapsed without a proffer of arbitration, (2) Board Member Fitzmaurice's inaction on IAM's February 2004 request for a proffer of arbitration, and (3) the September 2004 letter from the NMB to an IAM member. Pl.'s Reply at 4–9. The plaintiff asserts that these three factors demonstrate the defendants' patent official bad faith and a substantial likelihood of success on the merits. The court disagrees and holds that these three factors, discussed individually below, are not sufficient to show that the plaintiff has a substantial probability of success on the claim that the NMB violated the Railway Labor Act by acting with patent official bad faith.

#### a. Length of Time

■ The plaintiff's primary argument is that the dispute has been in mediation for such a long period of time that the defendants' refusal to proffer arbitration indicates bad faith. Pl.'s Mot. at 4. The NMB's power to hold the parties in mediation is an important tool to bringing the parties to conciliation. *Local 808*, 888 F.2d at 1438; *Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Nat'l Mediation Bd.*, 930 F.2d 45, 49 (D.C.Cir.1991) (*"IAM 2"*) (stating that "the Board is entitled to use time alone to wear down an obdurate bargainer"). Indeed, the Railway Labor Act does not have any express time limit on mediation and its

---

4. The judicial power of review over NMB decisions is so limited that the few district courts that have ordered the NMB to terminate mediation and proffer arbitration have been overturned on appeal. *See, e.g., Local*

*808, Bldg., Maint., Serv. and R.R. Workers v. Nat'l Mediation Bd.*, 888 F.2d 1428 (D.C.Cir. 1989) and *Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Nat'l Mediation Bd.*, 425 F.2d 527 (D.C.Cir.1970) (*"IAM 1"*).

"procedures are purposely long and drawn out." *Local 808,* 888 F.2d at 1438; *IAM 1,* 425 F.2d at 534. Additionally, contrary to the plaintiff's contention,[5] "[t]he proper time for a dispute to remain in mediation is not susceptible of any objective or statistical estimation by the court." *Local 808,* 888 F.2d at 1438. Larry Gibbons, Director of the NMB's Office of Mediation Services, observed that a number of cases on the NMB's mediation docket have been in mediation for longer than the case at bar. Gibbons Decl. ¶ 12 and Attach. 2. Contrary to IAM's statement that " '# of days' for the other allegedly similar situations" is irrelevant, Pl.'s Reply at 5, it is appropriate for a court to compare the time in mediation in the case at bar with the time in mediation in other Railway Labor Act disputes. *Local 808,* 888 F.2d at 1439. Additionally, "even if the period in mediation has exceeded the norm, this does not mean that there has been patent bad faith on the part of the Board." *Id.* at 1440. "Only in the most extreme circumstances will a court find a period to be completely and patently unreasonable so as to indicate patent official bad faith." *Id.; see also IAM 1,* 425 F.2d at 541 (holding that the court could not require the NMB to proffer arbitration even when the amount of time spent in mediation was more than customary). Because the case at hand is not unusual in comparison to other NMB disputes, it is unlikely that the plaintiff could succeed on the merits based on the length of time the dispute has been in mediation.

### b. Board Member's Inaction on IAM's Request for Proffer

 The plaintiff also contends that defendant Board Member Fitzmaurice's lack of vote on the IAM proffer request "prevents the Board from acting" and is further proof of the NMB's bad faith. Pl.'s Mot. at 3. The NMB's inaction, however, may serve as a mediation technique because "withholding of the proffer is a 'crucial' tool for encouraging compromise and settlement." *Local 808,* 888 F.2d at 1443. For example, "[a]n NMB member may legitimately indicate an unwillingness to move a dispute out of mediation in order to pressure the parties to settle." *Id.* at 1441. In other words, "the actions of the NMB are easily explained as common mechanisms for bringing recalcitrant parties to the table." *Id.* at 1442. As such, Fitzmaurice's lack of vote is unlikely to be enough for the plaintiff to succeed on the merits.

### c. September 2004 Letter from the NMB to an IAM Member

Lastly, the plaintiff points to the "antiunion animus" in the September 2004 letter from Rainey to a Union Pacific Railroad employee as evidence of the NMB's patent official bad faith. Pl.'s Mot. at 3; Pl.'s Reply at 11. The plaintiff claims it was hostile and accusatory for Rainey to tell the employee that he may want to consult the internal union rules or a private attorney if he believed the union was not adequately representing his interests. Pl.'s Reply at 11. The plaintiff contends that the statement was meant to imply that IAM is responsible for the stalemate in negotiations. *Id.* On its face, however, the statement is not evidence of patent official bad faith because in advising the employee of the possibility of procuring legal advice, Rainey "was simply stating the law," and "a statement of the law as it is cannot be interpreted as a sign of patent

---

**5.** The plaintiff asserts that the NMB should solve mediation disputes in one year. Pl.'s Mot. at 4. But, courts have never imposed such a requirement. *See, e.g., Int'l Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Nat'l Mediation Bd.,* 930 F.2d 45, 47 (describing a dispute that had been in mediation for longer than one year).

official bad faith." *Local 808*, 888 F.2d at 1441. Additionally, the court is "not entitled to prevent the Board from experimenting with any mediation device that ... does not independently offend other laws." *IAM 2*, 930 F.2d at 48.

Because judicial review of NMB decisions is reserved only for the most extreme situations and the three factors described by the plaintiff do not clearly evidence patent official bad faith, the court concludes that the plaintiff is not likely to be successful on the merits.

### 2. The Plaintiff Fails to Show Irreparable Harm

 Assuming *arguendo* that the plaintiff was able to sufficiently demonstrate a likelihood of success on the merits of the claim, the court would nevertheless deny the request for injunctive relief because the plaintiff has not shown that irreparable harm is likely to result from the defendants' actions. The plaintiff claims that its members have suffered and continue to suffer irreparable harm because retired workers will receive reduced pensions, and older workers near retirement will have to work longer to benefit from the higher, negotiated wages. Pl.'s Mot. at 4. The plaintiff also claims that IAM machinists are "entitled to see the major dispute process progress to the next step contemplated by the statute so that a new agreement can be reached." *Id.* In essence, the plaintiff contends that its members are being deprived of the higher wages that would result from a new agreement. *See, e.g.,* Reynolds Decl. ¶ 32–33.

 But, a loss of income does not constitute irreparable injury because the financial loss can be remedied with money damages. *Davenport v. Int'l Bhd. of Teamsters, AFL–CIO*, 166 F.3d 356, 367 (D.C.Cir.1999) (holding that money damages could remedy the harm caused by increased working hours and decreased benefits) (citing *Sampson v. Murray*, 415

U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), a wrongful discharge case that held that loss of earnings or damage to reputation does not constitute irreparable injury). It is well-settled that economic loss alone will rarely constitute irreparable harm. *Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C.Cir. 1985); *Barton v. District of Columbia*, 131 F.Supp.2d 236, 247 (D.D.C.2001) (Urbina, J.). Because money damages can adequately compensate monetary loss, the plaintiff has not shown that it will suffer irreparable harm.

### 3. A Preliminary Injunction Might Substantially Injure Other Interested Parties

 The plaintiff argues that "the NMB will suffer no harm whatsoever if an injunction is ordered." Pl.'s Mot. at 13. But, the NMB is not the only interested party in this case. The NCCC is also an interested party, and granting the preliminary injunction would also harm the rail carriers. *See, generally, Int'l Ass'n of Machinists and Aerospace Workers v. Nat'l Mediation Bd.,* 180 F.Supp.2d 188, 190 (D.D.C.2002) ("*IAM 3*") (analyzing a preliminary injunction motion by IAM against the NMB and stating that the carrier and the union would both be harmed). In other words, "the harms seem to be evenly balanced," *id.*, and a preliminary injunction might harm other interested parties.

### 4. The Plaintiff Fails to Show That a Preliminary Injunction Is in the Public Interest

 The parties agree that the public interest lies in following the dispute resolution process established by the Railway Labor Act. *See* Pl.'s Reply at 12 (stating that "[t]he public interest lies in the settlement of disputes consistent with the pro-

cess established by Congress.") and Defs' Opp'n to Pl.'s Mot. for Prelim. and Permanent Inj. Relief at 27. The parties disagree, however, on whether the NMB has properly followed the dispute resolution process established by the Railway Labor Act. Recognizing that in a labor dispute "courts have no special competence to say where the public policy lies," *IAM 3*, 180 F.Supp.2d at 190, the court feels that "[t]here is a broader concern, that inquiry as to the reasoning process in regard to maintenance of mediation is destructive of the mediation process in general, including future cases not yet born." *IAM 1*, 425 F.2d at 540. Indeed, "intrusive judicial scrutiny would likely prolong the dispute—litigation hardens the parties' positions and 'the artificial pressure and distortion of an appeal to the courts further detracts from the mediatory effort.'" *IAM 2*, 930 F.2d at 49. The court therefore believes that the public interest likely lies in keeping the dispute in the mediation process as envisioned by the Railway Labor Act.

Because the plaintiff does not meet three out of the four factors of the preliminary injunction test, the courts denies the plaintiff's motion.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motion for a preliminary injunction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of June, 2005.